## COMPTROLLER OF THE TREASURY OF THE STATE OF MARYLAND *v.* CAMPANELLA, Executrix of the Last Will and Testament of Joseph A. Campanella

[No. 333, September Term, 1971.]

*Decided May 12, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Francis X. Pugh, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Evan A. Chriss,* with whom were *Charles E. Bienemann, Jr., S. Booker Carter, Jr.* and *Gordon, Feinblatt & Rothman* on the brief, for appellee.

FINAN, J.,* delivered the opinion of the Court.

The State of Maryland and a taxpayer are the opposing parties in this appeal. The question presented is: Where an additional Maryland estate tax payment is made later than the due date of fifteen months after decedent's death, and interest is charged on the additional payment

for a period from the due date to the date of payment, pursuant to Article 62A, Section 5 of the Maryland Code, does a subsequent payment of the inheritance tax, entitling the decedent's estate to a corresponding refund of the Maryland estate tax, also entitle the estate to a refund of the interest charged?

The taxpayer (appellee) appealed to the Maryland Tax Court from the refusal of the Comptroller of the Treasury, appellant (Comptroller), to refund interest which had been charged on a payment of the Maryland estate tax made more than fifteen months after the decedent's death. The Maryland Tax Court reversed the action of the Comptroller and ordered return of the interest paid. The Comptroller took the present appeal, pursuant to Code (1971 Supp.) Art. 81, § 229 (1). For reasons which we hereafter state, we reverse the order of the Tax Court.

Joseph A. Campanella died on February 15, 1967. An initial payment of Maryland estate tax was made prior to the filing of the federal estate tax return, on May 15, 1968. Following an audit of the federal return, the federal estate tax was increased, which resulted in an increase in the Maryland estate tax. Accordingly, an additional payment of Maryland estate tax in the amount of $31,991.71 was made on April 14, 1970. Because this additional payment was made more than fifteen months after decedent's death, the Comptroller (appellant) assessed and collected an interest charge of $3,564.04 on this payment, pursuant to Article 62A, Section 5 of the Maryland Code.

In September, 1970, upon final distribution of the estate, an inheritance tax payment was made in the amount of $5,760.42. This entitled the taxpayer to a corresponding $5,760.42 refund of Maryland estate tax, which refund was paid. However, the taxpayer also sought refund of $548.57 of the above interest charge of $3,564.04, the $548.57 representing interest assessed on the $5,760.-42 refunded portion of the $31,991.71 additional, or late, payment of Maryland estate tax. The Comptroller re-

fused to refund the interest. The only point at issue in this case is whether the taxpayer is entitled to a refund of this interest.

The statutes involved are Article 62A, Sections 3 and 5, which read as follows:

Section 3:

> "§ 3. The 'Maryland estate tax' shall be payable fifteen months after date of death of the 'decedent' and shall bear interest thereon at the rate of 6% per annum from the due date to the date of payment. This rate shall be reduced to agree with a reduced federal interest rate. (An. Code, 1951, § 3; 1939, § 3; 1929, ch. 275, § 3; 1965, ch. 794.)"

Section 5, as amended:

> "§ 5. Additional assessment of tax or refund of excess payment; interest on additional payment or refund.

> If the amount of 'federal estate tax' shall, upon the final determination of the same, be increased or decreased as affecting an 'estate' the transfer of any part whereof is taxable hereunder subsequent to the payment of the 'Maryland estate tax,' the said 'Maryland estate tax' imposed shall be changed accordingly. Any additional 'Maryland estate tax' shall be payable at the same time or times at which the additional 'federal estate tax' is payable and shall bear interest thereon at the rate of 6% per annum from fifteen months after the date of death of the 'decedent' to the date of payment of such additional 'Maryland estate tax.' The rate of interest shall be reduced to agree with a reduced federal interest rate. In the event that there shall be a decrease in said 'federal estate tax', said 'executor' shall file with the Comptroller of the State of Maryland an affi-

davit in such form as is prescribed by said Comptroller. Said Comptroller shall thereupon cause to be paid to said 'executor' from the fund retained by him, as provided in § 4 of this article, the amount of refund found to be due, together with interest thereon at the rate of six per centum (6%) from the date of payment of the 'Maryland estate tax.' Refund shall be paid by the Comptroller because of payment of Maryland inheritance taxes subsequent to the payment or payments of the 'Maryland estate tax' or because of demonstrable error in the 'Maryland estate tax return' but such refunds shall not be subject to the payment of interest by the Comptroller. If the fund retained by the Comptroller shall be insufficient, the Comptroller shall retain from the next subsequent receipts of the 'Maryland estate tax' such amount as will be necessary to make the said refund. * * *"

The Tax Court in its decision noted that Article 62A, Section 5 was amended in 1965 to modify the effect of our decision in *Comptroller v. Davidson, Co-Exec.*, 234 Md. 269, 199 A. 2d 360 (1964), wherein we held that if a Maryland estate tax refund was owed to the taxpayer due to a subsequent payment of inheritance taxes, the amount of the refund earned 6% interest, while held by the Comptroller. Accordingly, under the present provisions of Section 5 the taxpayer is not entitled to interest on the $5,760.42 overpayment of the Maryland estate taxes which overpayment was caused by the subsequent payment of inheritance tax, for the period during which the overpayment was held by the State from April 14, 1970 to October 6, 1970. The Tax Court, however, further noted that the taxpayer in the instant case is not claiming interest on the overpayment for that period, but rather is seeking a refund of interest which it had paid on the overpayment, which overpayment was erroneously paid to the State for the period from May

15, 1968 to April 15, 1970. The Tax Court concluded its holding by stating that "there is nothing in either Section 3 or Section 5 of Article 62A * * * to support the refusal of the Comptroller to refund the excess interest paid in the amount of $548.57 * * *."

The taxpayer urges upon us that a claim for *refund* of the Maryland estate tax within the context of its use in Section 5 of Article 62A, includes by implication a claim for interest due on the tax and, logically, therefore, a claim for refund of interest paid thereon when applicable. The taxpayer also uses the following example to illustrate the reasonableness of her contention:

> "Assuming a decedent died on January 1, 1968, the Maryland estate tax return would be due on April 1, 1969. If such return were not filed until September 30, 1969 (six months after the due date) and the return showed Maryland estate taxes due in the amount of $1,000.00, there would be interest due and payable at that time in the amount of $30.00. If it is further assumed that upon subsequent audit of the federal estate tax return completed on January 1, 1971, the federal estate tax is reduced to the point at which there would be no Maryland estate tax, then under the provisions of Section 5, the estate would be entitled not only to a refund of the $1,000.00 Maryland estate tax theretofore paid, but also to interest thereon at 6% from October 1, 1969 to the date of refund. However, under the Comptroller's construction of Section 5, the estate would not be entitled to a refund of the $30.00 interest that it had paid for the period from April 1, 1969 to September 30, 1969, even though there is no Maryland estate tax."

However, the example cited by the taxpayer and the argument sought to be drawn therefrom, dismisses too lightly the need for the State, in the orderly administra-

tion of its fiscal affairs, to establish definite filing dates for tax returns and tax payments which are meaningful. To accomplish this, it is an almost universal practice for governments to impose charges which are incurred when filing or payment is delinquent. This practice serves as an inducement for the taxpayer to be prompt in payment or otherwise incur a penalty in the event that he is tardy. *United States v. Childs,* 266 U. S. 304, 308 (1924) ; *State v. Hitsman,* 44 P. 2d 747, 750 (Mont. 1935) ; *Jones v. Williams,* 45 S.W.2d 130, 133 (1931).

The situation in which the taxpayer finds himself when he pays the Maryland estate tax 15 months after the date of death, only to later make a redetermination of the tax based upon the Federal estate tax credit, is analogous to that where a taxpayer after filing his federal income tax return for a given year subsequently finds, in a later year, that he is entitled to a carry-back of a net operating loss. In *Manning v. Seeley Tube & Box Co.,* 338 U. S. 561 (1950), the taxpayer was charged interest by the Internal Revenue Service on 1941 income and excess profits tax deficiencies. The subsequent carry-back of a net operating loss for the period of October 1941 to September 30, 1942, was sufficient to abate completely the taxpayer's liability for 1941. The Court in discussing the treatment which should be given a claim for repayment of interest charged upon the apparent deficiency when the initial return was filed, stated:

"* * * If a net operating loss is subsequently sustained, that loss may be carried back and added to the deductions for the two previous taxable years, with appropriate adjustments in the tax liability for those years. The problem with which we are concerned in this case is whether the interest on a validly assessed deficiency is abated when the deficiency itself is abated by the carry-back of a net operating loss.

We hold that the interest was properly withheld by the Collector. The subsequent cancella-

tion of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency. From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax." 338 U. S. at 565.

Also, in *Arata v. Commissioner of Internal Revenue,* 277 F. 2d 576, 579 (2d Cir. 1960), wherein the taxpayer failed to file a declaration of estimated income tax due in March 1953 and argued that his failure to file was due to an honest difference of opinion as to the amount of tax due and, furthermore, that he should not have been penalized as his final return for 1953 showed that a refund was due him, Chief Judge Lumbard, writing for the court, noted: "* * * nor does the fact that a refund may ultimately be due provided an excuse. * * *."

The main thrust of the Comptroller's argument is that the interest so charged on the late payment is imposed as an incentive for prompt payment of the tax and as a penalty for late payment. It appears that some courts would distinguish interest from a penalty on the basis that "A penalty is a means of punishment; interest is a means of compensation. * * *", *United States v. Childs,* 299 U. S. 304, 307 (1924). Other courts endeavor to make such a determination predicated on whether the charge for delinquent payment is approximately the same as the established legal rate of interest or in excess of that rate, *In re Denver & R. G. W. R. Co.,* 27 F. Supp. 983, 984 (D. Colo. 1939), on the theory that the government has the right to the use of the money and upon its being withheld it has the right to charge interest. However, while adopting the principle that the State has a right to the use of the money on the date that the tax is due and owing, we are also of the opinion that the imposition of interest for late payment as provided by the statute is also intended by the legislature as an inducement to the taxpayer to pay the tax when due. We view

the following language of the court in *In re Roger's Estate,* 22 N.W.2d 297, 304 (Neb. 1946) as apposite:

"The penalty of interest imposed * * * is that which the Legislature has fixed as an inducement to pay taxes and is levied for a failure to pay them."

See also *In re Chicago & N. W. Ry Co.,* 119 F. 2d 971 (7th Cir. 1941) ; *In re Elvigen's Estate,* 71 P. 2d 672, 676 (Wash. 1937) ; *State v. Hitsman,* 44 P. 2d 747, 750 (Mont. 1935), 77 A.L.R. 1025; *Jones v. Williams,* 45 S.W.2d 130, 136 (Tex. 1931) and 3 *Cooley on Taxation,* § 1274 (4th ed.), wherein it is stated: "Interest is a penalty to insure prompt payment, and is not * * * a part of the tax. * * *." Of similar import is the following language found in *In re Roger's Estate, supra*:

"We have held that the various impositions made by legislative authority for failure to pay taxes when due, whether designated as interest, penalties, costs, or anything else, are in fact penalties and not debts, and are in reality no part of the tax."

It would therefore logically follow that the charge, not being a part of the tax, can form no part of a tax refund, as that term is used in the statute.

The Comptroller reinforces his contention by arguing that if a refund of the late interest charge were to be granted by the State this would penalize the diligent taxpayer and give an advantage to the delinquent taxpayer. For example, he compares two estates, identical in all respects save the time of payment of the Maryland estate tax. Estate "B" pays its tax one year late, during which time the executor holds the money in an income bearing account. Both estates eventually qualify for a refund of the Maryland estate tax. Estate "B," according to the argument of the taxpayer in this case, would receive back the interest penalty, while conceivably it had also had the benefit of the income on the interest bear-

ing account due to the lateness of its payment, an advantage not enjoyed by Estate "A" which paid its taxes on time. Certainly, the Legislature by establishing a payment deadline, did not intend that it could be ignored and conceivably produce such an incongruous result. *B. F. Saul v. West End Park,* 250 Md. 707, 722, 246 A. 2d 591 (1968).

Finally, we would note that, "All refunds of State taxes are matters of grace with the Legislature." *Wasena Housing Corp. v. Levay,* 188 Md. 383, 389, 52 A. 2d 903 (1947). Also in *Foote v. Harrington,* 129 Md. 123, 129, 98 A. 289 (1916) our predecessors recognized that a taxpayer was not entitled by right to a refund of taxes paid pursuant to a law which was subsequently held invalid by the United States Supreme Court; and see *Red Star Line v. Baughman,* 153 Md. 607, 611, 139 A. 291 (1927) ; *Baltimore v. Harvey,* 118 Md. 275, 279, 84 A. 487 (1912) ; *Lester v. Baltimore,* 29 Md. 415, 417 (1868) ; and *cf. George's Creek Coal and Iron Co. v. County Commissioners,* 59 Md. 255, 260-261 (1883). We find no authorization in the language of Article 62A, Section 5, for the repayment of interest incurred by late filing of the Maryland estate tax where the redetermination of the federal estate credit demonstrates that there was no Maryland estate tax due or that the overpayment on which the interest penalty was paid was less than the amount actually due. In other words there is no statutory authority excusing the interest (penalty) for the late payment of the Maryland estate tax. See Vol. 84 C.J.S., *Taxation,* § 631, p. 1263.

While it may be contended that the statute on occasion works a seeming unfairness on an estate by charging interest on the payment of a Maryland estate tax which was promptly made upon the redetermination of the federal estate credit, yet, we are mindful of the fact that had a correct federal estate tax return been filed initially, the entire Maryland estate tax would have been payable 15 months after the death of the decedent. Should the feeling generally persist that an inequity to

the taxpayer exists under Section 5, although it is not all that apparent to us, we suggest that, insofar as future taxpayers are concerned, relief may lie with the Legislature.

*Order reversed, appellant to pay costs.*