PAGE ET AL., CO-EXECUTORS OF ESTATE OF ALICE
CARTER MIDDENDORF *v.* COMPTROLLER
OF THE TREASURY

[No. 127, September Term, 1973.]

*Decided January 9, 1974.*

726

*Motion for rehearing filed · January 15, 1974; denied and opinion modified January 25, 1974.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Charles G. Page*, with whom were *White, Page & Lentz* on the brief, for appellants.

*Francis X. Pugh, Assistant Attorney General*, with whom was *Francis B. Burch, Attorney General*, on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Stripped of its not inconsiderable complexities, this case turns on the question whether the State may collect interest on that portion of the Maryland estate tax payable by a decedent's estate which was not paid until final distribution of the estate, at a time more than 15 months after the death of the decedent.[1]

---

1. Maryland Code (1957, 1972 Repl. Vol.) Art. 62A, § 3 provides: "The 'Maryland estate tax' shall be payable fifteen months after date of death of the 'decedent' and shall bear interest thereon at the rate of 6% per annum from the due date to the date of payment. This rate shall be reduced to agree with a reduced federal interest rate."

Alice Carter Middendorf died domiciled in Baltimore County, Maryland on 27 August 1967, leaving an estate in excess of $2,500,000.00. Her will, which named her husband, J. William Middendorf, Jr., and Charles G. Page as executors, was admitted to probate. On 22 November 1968, the executors filed a timely federal estate tax return which developed a gross tax of $277,875.00; claimed a credit for State death taxes of $29,321.66,[2] and recognized a net federal estate tax liability of $248,553.34, which was paid when the return was filed.

Three days later, on 25 November, the executors filed a Maryland Estate Tax Return with the Comptroller of the Treasury. This developed a gross Maryland estate tax liability of $29,321.66 (identical with the amount of credit for State death taxes claimed on the federal return); credit was taken for Maryland collateral inheritance tax and Maryland direct inheritance tax which had been paid, in amounts of $405.40 and $124.00 respectively,[3] as well as for an additional Maryland direct inheritance tax in the amount of $17,895.26 which the executors estimated would be paid upon final distribution of the estate. It can be seen that the aggregate amount taken as credits against the tax liability of $29,321.66 totalled $18,424.66, reducing the net amount of the Maryland estate tax to $10,897.00, which was paid when the return was filed.

On final audit of the federal estate tax return, the gross federal estate tax was increased from $277,875.00 to $283,079.70, causing a corresponding increase in the credit for State death taxes from $29,321.66 to $30,109.36. An additional federal estate tax of $4,417.00 was then paid by the executors together with interest of $446.78.

**2.** This amount was the so-called "80% credit" against the basic federal estate tax for "estate, inheritance, legacy, or succession taxes actually paid to any State," authorized by Int. Rev. Code of 1954, § 2011(a). Section 301(b) of the Revenue Act of 1926, 44 Stat. 9, 70, provided for a maximum 80% credit; today, however, the maximum credit allowed cannot exceed the amounts prescribed by Int. Rev. Code of 1954, § 2011(b). The correlative Maryland provision to section 2011 is found in Code (1957, 1972 Repl. Vol.) Art. 62A, § 2.

**3.** The total of $529.40 is correct, but collateral inheritance taxes seem to have been in the amount of $500.36 and direct taxes, $29.04.

Upon completion of the audit of the federal estate tax return, the executors were then in a position to make final distribution of the estate, which would generate the proof of payment of State death taxes required by the District Director of Internal Revenue.[4] Accordingly, they then filed an amended Maryland Estate Tax Return, reflecting the increase in the State tax credit from the original figure of $29,321.66 to $30,109.36; claimed allowance for Maryland collateral inheritance taxes previously paid in the amount of $405.40 and for direct inheritance taxes in the amount of $18,656.56, which by then had been paid, as well as the Maryland estate tax payment of $10,897.00 made when the return had originally been filed. There then remained a deficiency of $150.40, which was paid together with two years' interest at 6%, or $18.05.

The Comptroller's response was something less than enthusiastic. Apparently relying on 54 Op. Att'y Gen. 438 (1969), and 44 Op. Att'y Gen. 382 (1959), he countered with a suit against the executors in the Baltimore County District Court for the recovery of $2,140.50, being 6% interest on $18,424.66 — the aggregate of credits claimed against the original Maryland estate tax liability — from 27 November 1968 to 30 October 1970, the date when the amended Maryland Estate Tax Return showing a Maryland estate tax balance of $150.40 due was filed and thereupon paid.

The case was transferred to the Circuit Court for Baltimore County, where the executors pleaded the general issue. While the suit was pending on 6 March 1973, Mr. Middendorf died. On suggestion of Mr. Middendorf's death, Charles G. Page and The Equitable Trust Company, his personal representatives, were substituted as co-defendants.

The case was tried by the court, without a jury, on a stipulation of facts from which our narrative is largely derived. After a consideration of the comprehensive

_____

4. The District Director, acting pursuant to Treas. Reg. § 20.2011-1(c)(2) (1958), requested that the executors furnish documentary evidence as proof that the State death taxes had been paid as a prerequisite to allowing a federal credit for such taxes. The executors were later informed that if such evidence was not received by 27 November 1970, the credit would be lost and a deficiency assessed.

memoranda submitted by the parties, judgment was entered in favor of the Comptroller for $2,140.50 and costs. Mrs. Middendorf's estate has appealed.

A maximum 80% credit for State death taxes was first allowed against the federal estate tax by Section 301(b) of the Revenue Act of 1926, 44 Stat. 9, 70. No effort was made by the General Assembly to take advantage of this early example of revenue sharing until the enactment of Chapter 275 of the Laws of 1929, *see Cross v. Downes*, 164 Md. 216, 218-19, 164 A. 758-59 (1933), apparently because the then Governor, Albert C. Ritchie, regarded the idea of the credit as an interference with his concept of States' Rights.[5] Whatever the reason for the delay, Maryland has since 1929 imposed an estate tax, now found in Maryland Code (1957, 1972 Repl. Vol.) Art. 62A, § 2, which is coordinated with the federal estate tax law. In simple terms, a tax is imposed in an amount by which the aggregate of inheritance taxes paid to the State incident to the settlement of a decedent's estate is less than the credit allowed by the Internal Revenue Code. Article 62A, § 2 provides:

> "In addition to the tax and/or taxes imposed by Article 81, a 'Maryland estate tax' is hereby imposed upon the transfer of the 'Maryland estate' of every 'decedent,' the amount of which 'Maryland estate tax' shall be equal to the extent, if any, of the excess of the 'credit' over the aggregate of 'State taxes' paid by or out of the 'Maryland estate' of the 'decedent' or any part thereof, provided, however, that such 'Maryland estate tax' hereby imposed shall in no case exceed the extent to which its payment will effect a saving or diminution in the amount of the 'federal estate tax' payable by or out of the 'Maryland estate' of the 'decedent' had this article not been enacted."

Although the thinking behind the legislative scheme can

---

5. Chepaitis, *Albert C. Ritchie in Power: 1920-1927*, 68 Md. Historical Magazine 383, 402 (1973). It was alleged that Maryland had lost $1,250,000.00 in revenues in the interim (1926 through 1929).

be simply stated, the practical application of the law is fraught with complexity, *see* Page, *Maryland Death Taxes*, 25 Md. L. Rev. 89, 104-10 (1965); Eney, *Death and Taxes — Maryland Style*, 17 Md. L. Rev. 101, 111-12 (1957).

In the administration of substantial estates, it is customary to delay distribution of a major portion of the assets until the federal estate tax liability is finally determined, which may come a year or more after the date of death. Anticipating our decision in *Comptroller v. Davidson*, 234 Md. 269, 199 A. 2d 360 (1964) (holding that in the event of an overpayment of Maryland estate tax, any excess was refundable with interest), it was the practice to pay the Maryland estate tax within the prescribed period of 15 months from death, and later seek a refund to the extent that the amount of Maryland estate taxes was reduced by inheritance taxes paid at the time of final distribution.[6]

Immediately following the decision in *Davidson, supra,* Chapter 794 of the Laws of 1965 amended Article 62A, § 5 to comport with the contention made by the Comptroller in that case: that interest was payable only on a refund of Maryland estate tax occasioned by a reduction of federal estate tax liability, and not on a refund resulting from the subsequent payment of inheritance taxes. As amended, Code (1957, 1972 Repl. Vol., 1973 Cum. Supp.) Art. 62A, § 5 now provides:

"If the amount of 'federal estate tax' shall, upon the final determination of the same, be increased or decreased as affecting an 'estate' the transfer of any part whereof is taxable hereunder subsequent to the payment of the 'Maryland estate tax,' the said 'Maryland estate tax' imposed shall be changed accordingly. Any additional 'Maryland estate tax' shall be payable at the same time or times at which the additional 'federal estate tax' is payable and

6. For many years, under the authority of 24 Op. Att'y Gen. 943 (1938), it had been customary to claim a credit for estate tax previously paid against inheritance taxes which would otherwise have been payable upon distribution. A contrary ruling by the Attorney General, 39 Op. Att'y Gen. 284 (1954), put an end to this eminently sensible solution of the problem.

shall bear interest thereon at the rate of 6% per annum from fifteen months after the date of death of the 'decedent' to the date of payment of such additional 'Maryland estate tax.' The rate of interest shall be reduced to agree with a reduced federal interest rate. In the event that there shall be a decrease in said 'federal estate tax,' said 'executor' shall file with the Comptroller of the State of Maryland an affidavit in such form as is prescribed by said Comptroller. Said Comptroller shall thereupon cause to be paid to said 'executor' [from the fund retained by him, as provided in § 4 of this article,] the amount of refund found to be due, together with interest thereon at the rate of six per centum (6%) from the date of payment of the 'Maryland estate tax.' Refund shall be paid by the Comptroller because of payment of Maryland inheritance taxes subsequent to the payment or payments of the 'Maryland estate tax' or because of demonstrable error in the 'Maryland estate tax return' *but such refunds shall not be subject to the payment of interest by the Comptroller.* [If the fund retained by the Comptroller shall be insufficient, the Comptroller shall retain from the next subsequent receipts of the 'Maryland estate tax' such amount as will be necessary to make the said refund.] A claim for refund of Maryland estate tax shall be filed within three (3) years after the event which causes the refund to become due, provided that no interest will be due on any such claim which has not been filed within one (1) year after such event." [7] (Emphasis supplied.)

The Comptroller finds comfort in *Comptroller v. Campanella,* 265 Md. 478, 290 A. 2d 475 (1972), the first case involving Article 62A, § 5 after it had been amended by Chapter 794 of the Laws of 1965. The holding in *Campanella,*

---

7. The provision is quoted substantially as it stood at the time of Mrs. Middendorf's death. Chapter 484 of the Laws of 1972, effective 1 July 1972, omitted the bracketed material.

however, must be confined to the facts of the case — the very facts which the 1965 amendment had been designed to reach. On audit of the Campanella federal estate tax return, a deficiency was assessed, creating an increase in the amount of the Maryland estate tax. Because the amount of the increase was paid more than 15 months after death, interest was paid on the additional tax. When final distribution was made at a later date, inheritance taxes amounting to $5,760.42 were paid, with the consequence that the estate became entitled to a Maryland estate tax refund in an equivalent amount. The estate claimed a refund of interest, which was denied by the Comptroller. The Maryland Tax Court allowed a refund of interest paid from May, 1968 (the due date) to April, 1970 (the payment date) in the amount of $548.57. Because we thought that this phase of the case fell squarely within the provisions of Article 62A, § 5, as amended, which did not provide for a recovery of interest previously paid, we reversed the allowance of the refund of interest paid. Our decision was based on the ground that no refund could be made of interest previously paid, because the interest constituted no part of the tax to which the refund provision applied and could not be returned to the taxpayer, absent specific statutory authority otherwise, *Comptroller v. Campanella, supra,* 265 Md. at 487, 290 A. 2d at 480. For these reasons, we are inclined to agree with the estate that *Campanella* is not dispositive of the issue here presented.

The Comptroller's next point is that Chapter 794 of the Laws of 1965, which amended Article 62A, § 5, also amended Article 62A, § 2 by substituting the word "paid" for "payable" in the phrase fixing the amount of the Maryland estate tax as:

> " . . . equal to the extent, if any, of the excess of the 'credit' over the aggregate of 'State taxes' *paid by or out of* the 'Maryland estate' of the 'decedent' . . . ."
> (Emphasis supplied.)

The executors counter with three arguments why the Comptroller should not prevail, which we find quite persuasive:

(i) The word "paid" may be regarded as the past tense of the verb "to pay." Alternatively, it may be the past participle of the verb "to pay." In the latter case, it may be passive or adjectival in nature and will imply no connotation of time. *See* B. Evans & C. Evans, A Dictionary of Contemporary American Usage 353, 361 (1957); *cf.* M. Bryant, Current American Usage 160 (1962);[8] *Anthony P. Miller, Inc. v. Commissioner*, 164 F. 2d 268 (3d Cir. 1947), *cert. denied*, 333 U. S. 861 (1948); *Estate of Slack*, 86 Cal. App. 2d 49, 53, 194 P. 2d 61, 64 (1948); *but cf. Giammattei v. Egan*, 135 Conn. 666, 668, 68 A. 2d 129-30 (1949).

(ii) The use of the word "paid" must be equated to its use in Int. Rev. Code of 1954,[9] § 2011(a), which allows a credit for "the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State . . . ." There is no connotation of time of payment; this is fixed by section 2011(c) as taxes actually paid for which credit is claimed within four years after the filing of the return.

(iii) The expression of legislative intent contained in the proviso which appears in Code (1957, 1972 Repl. Vol.) Art. 62A, § 2:

"[P]rovided, however, that such 'Maryland estate tax' hereby imposed shall in no case exceed the extent to which its payment will effect a saving or diminution in the amount of the 'federal estate tax' payable . . . ."

---

**8.** While the passive participle is ordinarily used with some form of the verb "to be," this is not always the case. For example, a sign in a store window reading "Checks Cashed" clearly connotes that checks have been cashed in the past, are cashed presently, and will be cashed in the future.

**9.** It should be kept in mind that an ultimate determination of Maryland estate tax liability must await the final determination of federal estate tax due. The Maryland estate tax "is fully subordinated to and controlled by the operation of the Federal Estate Tax," 42 Op. Att'y Gen. 369, 371 (1957); 38 Op. Att'y Gen. 295 (1953). Further evidence of the Maryland estate tax's dependence upon the federal estate tax scheme may be gleaned from an examination of Code (1957, 1972 Repl. Vol.) Art. 62A, §§ 3, 7, 8, 11.

We think that the estate has the better of the argument. Code (1957, 1969 Repl. Vol.) Art. 81, § 152 and Code (1957, 1969 Repl. Vol.) Art. 93, § 7-307(a), do not require the payment of inheritance taxes until the estate is distributed,[10] 56 Op. Att'y Gen. 371, 372 (1971); 40 Op. Att'y Gen. 558 (1955), at which time they must be paid. The executors had computed the amount, and could properly take credit for what was to be paid. To say that the statutory scheme required an overpayment of estate tax within 15 months after death, and the subsequent filing of a claim for refund, upon which no interest was payable once the inheritance tax had been paid, defies both reason and logic, and finds no support in Code (1957, 1972 Repl. Vol., 1973 Cum. Supp.) Art. 62A, § 5.

> *Judgment reversed, judgment for costs entered in favor of defendants below, appellants here.*
> *Costs on appeal to be paid by appellee.*

10. "The vesting of title of property in the transferee is the taxable incident of distribution in Maryland's system of inheritance taxation," 40 Op. Att'y Gen. 558, 560 (1955); Mercantile-Safe Deposit & Trust Co. v. Register of Wills, 252 Md. 311, 316, 250 A. 2d 76, 80 (1969); *see also* Code (1957, 1969 Repl. Vol.) Art. 93, § 7-307(a): "An inheritance tax due with respect to any legacy shall be paid at the time of accounting for its distribution."