Jim C. PLEDGER, Director, Department of Finance and Administration *v.* WORTHEN BANK & TRUST COMPANY, Inc., Executor of the Estate of Granville M. Cook, Deceased

93-1025                                          889 S.W.2d 732

Supreme Court of Arkansas
Opinion delivered December 19, 1994
[Rehearing denied January 23, 1995.*]

*Dudley and Newbern, JJ., would grant rehearing; Roaf, J., not participating.

*Joyle Kinkead*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard*, by: *Richard A. Williams*, for appellee.

ELIZABETH ROBBEN MURRAY, Special Justice. In this appeal, the Director of the Department of Finance and Administration challenges the Summary Judgment of the Chancery Court that the Estate was entitled to a marital deduction and, accordingly, is entitled to a refund of Arkansas estate taxes paid under protest. We affirm.

Granville M. Cook died on August 20, 1989. He executed his Last Will and Testament on December 2, 1970; the First Codicil on December 7, 1981; and the Second Codicil on July 6, 1983. He was survived by his wife, Ruby S. Cook.

Under the terms of the Will, if Ruby S. Cook survived Mr. Cook for a period of six months, she received 50% of the Estate outright. In 1970, it is undisputed that 50% was the percentage that qualified for the marital deduction for federal estate tax purposes. Under the Will, the remaining 50% was placed in trust for the benefit of Mrs. Cook. Article Fourth of the Will mandated the distribution of the trust net income to Mrs. Cook at least quarter-annually for the remainder of her life.

The 1981 First Codicil sought to take advantage of changes in the federal estate tax laws. Under the First Codicil, the Estate was divided into two shares. The first share (Share No. 1) passed outright to Mrs. Cook and was equal to the minimum amount necessary to secure the marital deduction and which will result in no federal estate taxes. Share No. 2, consisting of the balance of the Estate after deducting the amount allocated to Share No. 1, passed in trust.

The Second Codicil, executed July 6, 1983 provides as follows:

> Because of the health of my wife, Ruby M. Cook, I hereby give, devise and bequeath the property, both real and personal, previously given to my wife, Ruby M. Cook, to People's Bank and Trust Company, to be held in trust by them for my wife, Ruby M. Cook. The purpose of the trust being that said trustee holds such funds and property for the use and benefit of my wife Ruby M. Cook, and do all things necessary in their judgment, to assist the said Ruby M. Cook, included but not limited to investments, payment of bills, payment to said Ruby M. Cook of funds sufficient to maintain her station in life in any and other things which might be done with said funds by my wife, Ruby M. Cook, should she be in good health.

> The purpose of this Codicil is not to reduce any bequest given to my wife, but is merely for the purpose to provide for the support and care of my wife, by reason of her health.

> Said People's Bank and Trust Company for the use and benefit of my wife shall be entitled to receive in trust for her all funds which I have previously designated as bequests to my wife.

> Said Trustee shall be required to use the same care in the management of this Trust as they are required to use in the management of all trusts now being administered by them.

> They shall have the power to sell, exchange, mortgage or otherwise (sic) any and all property coming to their hands under this Trust.

As amended and modified by the First Codicil and this Second Codicil thereto, I hereby republish, and affirm my Last Will and Testament dated the second day of December, 1970.

Following the death of Mr. Cook, Worthen Bank & Trust Company (successor to People's Bank and Trust) as executor petitioned the Probate Court of Pope County for an Order construing the Will and the two codicils. The question for the Probate Court, as here, was the effect of the Second Codicil. If the Second Codicil created a completely new Trust, there were no instructions concerning distribution of income and principal, nor were there any provisions for the distribution upon the death of Mrs. Cook.

In October, 1989, the Probate Court entered an Order construing the Will and the First and Second Codicils. The Probate Court found that the combined effect of the three instruments was as follows: (1) if Ruby S. Cook survived the decedent by six months the Estate was divided into two shares, the first funded by property which would be subject to the unlimited marital deduction and the other funded by the unified credit equivalent exemption from estate tax liability; (2) both shares of the Estate were to be held in trust for the benefit of Ruby S. Cook; (3) with respect to each Trust Article Fourth of the Will required that (a) the net income was to be distributed to Mrs. Cook at least quarter-annually for the remainder of her life and (b) the Trustee was to distribute from principal any amounts necessary for Mrs. Cook's care and maintenance, if the net income was insufficient for that purpose; and (4) under Article Fifth of the Will, if Mrs. Cook did not survive the decedent for six months or following her death, the assets of each Trust would be distributed to the Cooks' children.

Neither the Internal Revenue Service nor the State of Arkansas were parties to the proceeding in the Probate Court, and no appeal was taken from the Probate Court's Order construing the three instruments.

On or before August 20, 1990, Worthen Bank & Trust Company, Inc., as executor, timely filed a United States Federal Estate Tax Return (Form 706) electing to qualify Share No. 1 for the marital deduction and provided a copy of the return to

the appellant. As a general rule, no marital deduction is allowed if a life estate passes to a surviving spouse and upon that spouse's death, the remainder passes to someone other than the surviving spouse. The surviving spouse's interest is considered to be a "terminable interest." Section 2056(b)(7) of the Internal Revenue Code (26 U.S.C. § 2056(b)(7)), however, provides an exception to that general rule. If certain requirements are met, the surviving spouse's interest is considered to be "qualified terminable interest property." If under the terms of the Will and codicils, Mrs. Cook is entitled to all of the income from the property, payable annually or at more frequent intervals, and no person has the power to appoint any part of the property to any person other than Mrs. Cook, it is qualified terminable interest property.

Upon examination of the return, the Internal Revenue Service notified the Estate that it was denying the Estate the marital deduction under § 2056(b)(7). This increased the taxable estate of the decedent and, accordingly, increased the amount of the federal credit allowable for state death taxes. Ark. Code Ann. § 26-59-106(a). The Department of Finance and Administration issued the Estate an assessment of estate taxes in the sum of $40,950 plus interest in the amount of $10,716. The Estate paid the assessed taxes and interest under protest and brought this suit for refund. Jurisdiction is in chancery court pursuant to Ark. Code Ann. § 26-18-406 (1987).

Arkansas Code Annotated § 26-59-106(a) provides:

A tax is imposed upon the transfer of real estate and personal property of every kind owned by every person who at the time of death was a resident of the State of Arkansas, the amount of which shall be a sum equal to the federal credit allowable under the Federal Estate Tax laws, 26 U.S.C. § 2001 *et seq.*, as in effect on January 1, 1983.

There is no dispute as to the material facts; only questions of law remain. For his first point on appeal, the appellant urges that contrary to the decision of the chancellor, he is "not required" to look behind the IRS disallowance of the marital deduction to see if the IRS examiner was correct as to the nature of the interest Mrs. Cook received. We note appellant does not go so far as to say he is *bound* by the IRS decision but only that

he may, if he so chooses, accept it. We do not believe the parties or this Court are bound by the decision of the Internal Revenue Service as to the construction of a will and codicils under Arkansas law nor do we find the above quoted statutory language mandates that interpretation.

The dissent suggests that by our ruling today we will create not only chaos but two asymmetrical taxation system procedures for estates. We disagree. First, this Court's decision in *McCastlain* v. *Berry*, discussed *infra*, does not appear to have opened any floodgates for estate tax disputes. Further, we do not equate resolution of legal questions pertaining to the construction of a will and its codicils to appraisals of property, examination of financial records or other matters regarding valuation of an estate. The appellee and the Internal Revenue Service will necessarily have to resolve the effect of our decision today on any federal estate taxes.

██ The appellant and apparently the Internal Revenue Service take the position that under the Second Codicil there is no provision for Mrs. Cook to receive the trust income at least annually, and so her interest does not meet the requirements of qualified terminable interest property pursuant to 26 U.S.C. § 2056(b)(7). The issue of Mrs. Cook's rights to income or property under her late husband's Will and codicils is a question of state law. *Estate of Bowling* v. *Commissioner*, 93 T.C. 286 (1989); *Estate of Holland* v. *Commissioner*, 64 T.C. 499 (1975). A similar situation faced this court in *McCastlain* v. *Berry*, 240 Ark. 587, 401 S.W.2d 38 (1966). In *Berry*, the Internal Revenue Service disallowed the estate a marital deduction on grounds the widow's interest was subject to divestment. Accordingly, additional Arkansas estate taxes were assessed and paid under protest. We affirmed the probate court's construction of the Will that, under Arkansas law, she received a bequest in fee simple and thus the bequest qualified for the marital deduction.

██ We believe the Chancery Court's decision was right in concluding that the probate court correctly ascertained Mr. Cook's intentions and properly construed the Will in a manner that harmonizes the Will and the First and Second Codicils. Under the terms of the original Will, Mrs. Cook was to receive one-half of Mr. Cook's adjusted gross estate outright. The residue of the

Estate was placed in trust for the benefit of Mrs. Cook during the remainder of her life and the co-trustees (one of whom was to be Mrs. Cook) were directed to distribute the net income of the Trust to Mrs. Cook at least quarter-annually during her lifetime. In addition, the trustees were given discretion to invade the principal of the Trust if needed for Mrs. Cook's care and maintenance as long as the distributions did not exceed $5,000 in any single year. Under the First Codicil executed in 1981, Mr. Cook republished his Will and added a paragraph to take advantage of recent changes in the marital deduction formula under federal estate tax laws. The First Codicil divided Mr. Cook's estate into two shares. There is no language in the First Codicil that negated the mandatory distribution of all net income to Mrs. Cook from the portion of the Estate held in trust.

Under the Second Codicil, Mr. Cook's intentions are clear. Because of his wife's health, he simply wished to change the bequest to Mrs. Cook from an outright bequest to one in trust. The Codicil specifically states:

> The purpose of this Codicil *is not to reduce any bequest given to my wife,* but is merely for the purpose to provide for the support and care of my wife, by reason of her health.

If anything, the trustees were given broad powers to do anything necessary in their judgment to assist Mrs. Cook. Nothing in the Second Codicil negated the Will's Fourth Article which provided for a mandatory distribution of net income at least quarter-annually to Mrs. Cook. To interpret the Second Codicil as not entitling Mrs. Cook to the net income from both Trusts would be contrary to Mr. Cook's expressly stated intent that the Second Codicil "is not to reduce any bequest to my wife."

The cases relied on by the appellant are easily distinguishable. In *Nicholson* v. *Commissioner,* 94 T.C. 666 (1990) the trust document at issue was not merely construed, but modified by a Court Order after the decedent's death. In *Wisely* v. *United States,* 893 F.2d 660 (4th Cir. 1990), where the court determined that a qualifying income interest had not been created the decedent's Will expressly directed the trustees that any income not used for the care and support of the surviving spouse was to be accumulated and added to the corpus of the trust. This language is clearly

distinguishable from that contained in the Fourth Article of Mr. Cook's Will.

Based on the above, we hold that the Chancellor properly granted summary judgment to the appellee and properly ordered the appellant to refund the taxes and interest paid under protest in the amount of $51,666 together with interest.

DUDLEY and NEWBERN, JJ., dissent.

GLAZE, CORBIN, and BROWN, JJ., join.

HOLT, C.J., joins.

HAYS, J., not participating.

ROBERT H. DUDLEY, Justice, dissenting. Granville M. Cook died testate on August 10, 1989, survived by his wife, Ruby S. Cook. Peoples Bank & Trust Company was initially appointed executor of the estate, and Worthen Bank & Trust Company, Inc., appellee, was appointed successor executor. The decedent died leaving a will and two codicils. On August 20, 1990, the executor filed a federal estate tax return, form 706, with the Internal Revenue Service. The return provided that a qualified terminable interest property election was made to qualify Share No. 1 for the marital deduction under section 2056 (b)(7) of the Internal Revenue Code. 26 U.S.C. § 2056(b)(7) (1988). On the same date, the executor filed an Arkansas estate tax return and attached to it a copy of the federal form 706.

Subsequently, the Internal Revenue Service determined that the estate was not entitled to the marital deduction because, under the will and codicils, Ruby S. Cook was not entitled to receive all of the net income of Share No. 1 for the remainder of her life. *See* § 2056(b)(7). As a result of this determination, federal estate tax was assessed.

As a consequence of the Internal Revenue Service's determination that federal estate tax was due, appellant Director notified appellee executor of the estate's liability for Arkansas estate tax. The amount of the Arkansas estate tax due was based on the amount of state estate tax allowable as a credit on the federal tax return. Ark. Code Ann. § 26-59-106(a) (1987). Appellee executor paid the tax and interest under protest and filed a petition in

chancery court for refund of the amount paid. *See* Ark. Code Ann. § 26-18-406 (Repl. 1992).

At trial in chancery court it was agreed that appellee executor supplied appellant Director with copies of documentation that it had provided to the Internal Revenue Service, and from that documentation, the Internal Revenue Service had determined that additional federal estate tax was owed. Under federal law, the Internal Revenue Service would give credit on the federal return for any tax paid to the State. Appellant Director contended that the applicable state statute was written to correspond with the federal law. The applicable state statute, section 26-59-106 of the Arkansas Code Annotated of 1987, provides that the amount of state estate tax is equal to the amount of credit allowable under federal law.

The chancery court rejected appellant Director's argument and ruled that appellant Director "erroneously concluded that it is not required to look behind the amount of the federal credit allowable." Appellant Director's first point of appeal is "the chancellor erroneously determined that appellant must look behind the amount of the federal credit allowable in determining the amount of the Arkansas estate tax due. Ark. Code Ann. § 26-59-106(a) (1987)."

The majority opinion affirms the ruling of the chancery court and, in discussing the first point of appeal, states that the Director only argues that he is "not required" to look behind the Internal Revenue Service's disallowance of the marital deduction, but "does not go so far as to say he is *bound* by the IRS decision but only that he may, if he so chooses, accept it." The majority opinion's quoted statement is obtuse. The reason that the Director argues that he is "not required" to look behind the Internal Revenue Service's disallowance of the marital deduction obviously is that the chancellor ruled that "[t]he Department of Finance and Administration erroneously concluded that it is not required to look behind the amount of the federal credit allowable." The words "not required" are the chancellor's words. The Director straightforwardly appeals from that ruling and, in doing so, uses the chancellor's words. It is unfair to state, as the majority opinion does, that in some way the Director contends that he is not "*bound* by the IRS decision but only that he may, if he so chooses, accept it." The Director does not make such an argument.

On the substantive merits of the case, the majority opinion disregards the language of the governing statute, which is as follows:

> A tax is imposed upon the transfer of real estate and personal property of every kind owned by every person who at the time of death was a resident of the State of Arkansas, the amount of which shall be a sum equal to the _federal credit_ allowable under the _federal estate tax laws, 26 U.S.C. § 2001 et seq._, as in effect on January 1, 1983.

Ark. Code Ann. § 26-59-106(a) (1987) (emphasis supplied). This statute plainly states that the amount of the state estate tax shall be the amount allowable as a "federal credit" "under the federal estate tax laws." *Id.* This is the *only* statute that sets the amount of the state estate tax. It says nothing about "state credits" or "state determinations."

The plain wording of the statute, standing alone, should be enough for the majority to hold that appellant Director's first point of appeal has merit, but even if the plain wording is not enough, when the policy underlying the plain wording is considered, the merit of appellant's point ought to be admitted. As set out in cases cited below, the Internal Revenue Service has the staff and resources to examine the books of accounts and other financial records, to conduct the appraisals of real property, to conduct the difficult evaluations of personal property, such as closed corporations with exclusive purchase agreements, and to do all the other complex tasks necessary to determine the value of an estate. Under the statutory design, the State does not have to duplicate the expense of such a staff and does not have to maintain the same resources. The federal and state statutes are deliberately harmonized so that the state provision for the amount of state estate tax will match the amount of credit allowed for state taxes on a federal estate tax return. The Director is, in the plain words of the statute, authorized to utilize the "federal credit" allowable "under the federal estate tax laws" to determine this otherwise complex and difficult question.

A significant number of other states have similar statutory provisions. *See, e.g., Henley* v. *Boswell*, 316 So. 2d 342 (Ala. 1975); *State* v. *Merchant's Nat'l Bank*, 91 So. 2d 480 (Ala. 1956); *Page* v. *Comptroller*, 313 A.2d 691 (Md. 1974); *In re Gallagher's Will*, 255 P.2d 317 (N.M. 1953); *In re Ward's Estate*, 49 P.2d

485 (Wash. 1935). For a more complete discussion of the development of this and other similar statutes see Max Oliver Cogburn, *The Credit Allowable Against the Basic Federal Estate Tax for Death Taxes Paid to State Statutes Enacted to Take Advantage Thereof — Constitutional Difficulty and Some Suggested Solutions*, 30 N.C. L. Rev. 123 (1952). The Arkansas statute is not unique. It, like those of other states, was deliberately drafted to blend with the federal statutes. The words of the statute should be given their plain and ordinary meaning.

The majority opinion's construction of the state statute destroys the symmetry of the federal and state statutes. Under the holdings of the majority opinion, the federal and state statutes become asymmetrical. Using the rationale of the majority opinion, neither the executor of an estate nor the Director will now be bound by the value assessed to an estate. As an example, assume the decedent owned Blackacre. The estate might claim, for state estate tax purposes, either a higher or lower value than did the Internal Revenue Service for Blackacre, and the Director might assess either a higher or lower value than did the Internal Revenue Service. If the Director assesses a higher value to Blackacre, the state estate tax would exceed the credit allowed under the federal estate tax, and thus the estate would be required to pay more taxes. If the Director assesses a lower value than did the Internal Revenue Service, the state estate tax would not be as great as the amount allowed by the Internal Revenue Service for the state estate tax credit, so the amount of the federal estate tax could be increased. This may well be the case at bar. Tax attorneys and the estates they represent will now have two separate estate tax proceedings rather than the present one. The whole estate tax procedure will be made unnecessarily complex, difficult and expensive. These complications could be avoided if the words of the governing statute were given their plain and ordinary meaning. The tax "shall be a sum equal to the *federal credit* allowable under the *federal estate tax laws.*" In response to the foregoing, the majority opinion offers two answers.

First, it answers that "we do not equate resolution of legal questions pertaining to the construction of a will and its codicils to appraisals of property, examination of financial records or other matters regarding valuation of an estate." This is a holding that the estate is not bound by Internal Revenue Service's deter-

mination of a legal question, but is bound by a factual determination on such matters as "property, examination of financial records or other matters regarding valuation of an estate." Yet, there is only one statute, and it provides that the amount of the state estate tax "shall be a sum equal to the *federal credit* allowable under *the federal estate tax laws.*" It is impossible to candidly read the statute to provide that matters of fact shall be determined by federal law, but matters of law shall be determined by state courts. And, again, the statement only complicates estate tax matters. Suppose that the Internal Revenue Service determines that a decedent made gifts in contemplation of death, and the gifts must be counted for federal estate tax purposes. Is this a matter of law that is now subject to review by state courts for state estate tax purposes, or is it a matter of fact that is to be determined by Internal Revenue Service?

Second, the majority opinion answers that "a similar situation faced this court in *McCastlain* v. *Berry*, 240 Ark. 587, 401 S.W.2d 38 (1966)," but it "does not appear to have opened any floodgates for estate tax disputes." The answer ignores the critical fact that the governing statute was neither cited, nor argued, nor at issue in *McCastlain*. But it is cited in this case, argued in this case, and is at issue in this case. The floodgates were not opened in *McCastlain* because the statute was not considered and was not given the interpretation the majority now gives it. The majority opinion will apply to all estate tax cases. There is only one state estate tax statute. Now, under the majority opinion, neither an estate nor the Director is now bound by a federal determination of the amount of "the federal credit allowable under the federal estate tax laws."

Even the appellee executor does not seriously challenge the appellant Director's interpretation of the language of the statute. Appellee executor merely says "such an interpretation . . . distorts the plain meaning of Ark. Code Ann. § 26-59-106(a)." Appellee executor offers no further challenge to the meaning of the words used in the statute. He does not suggest a reason for not giving the words their usual and customary meaning. He does not suggest an alternate meaning. Rather, he gives a wholly different reason to uphold the trial court. He contends that a literal reading of the statute would result in an "unconstitutional delegation of legislative and judicial power to the federal govern-

ment." Appellee executor then cites cases holding that the general assembly cannot delegate its legislative authority. *See, e.g., Cheney* v. *St. Louis Southwestern Ry. Co.*, 239 Ark. 870, 394 S.W.2d 731 (1965); *Crowly* v. *Thornbrough*, 226 Ark. 768, 294 S.W.2d 62 (1956). The governing statute provides that the amount of credit is to be determined under the federal estate tax laws "as in effect on January 1, 1983." The statute was enacted after January 1, 1983. *See* Ark. Code Ann. § 26-59-106 publisher's notes (1987). Consequently, the statute was based on federal law in existence at the time it was adopted and is not subject to future federal legislation. It appears that every jurisdiction would hold this provision does not constitute an unconstitutional delegation of legislative authority. *See* Annotation, *Constitutionality, construction, and application of provisions of state tax law for conformity with federal income tax law or administrative and judicial interpretation*, 166 A.L.R. 516 (1947) and supplement in 42 A.L.R.2d 797 (1955). The statute at issue in this case is not "a formula subject to prospective federal legislation or administrative rules," as was the provision in *Cheney* v. *St. Louis Southwestern Railway Co.*, 239 Ark. 870, 394 S.W.2d 731 (1965). The statute, when given its literal meaning, does not amount to an unconstitutional delegation of legislative authority. Even if Congress should change the federal laws, the state estate tax still would be determined under the federal estate tax law "as in effect on January 1, 1983."

In conclusion, this case does not involve a common law subject, and it does not involve this court's determination of what the common law should be. Rather, this case involves taxation and the subject of taxation is governed entirely by statute. The governing statute provides that the state estate tax "shall be a sum equal to the *federal credit* allowable under the *federal estate tax laws*." (Emphasis supplied.) The majority opinion affords no meaning to the clear wording of the statute that provides for the state estate tax, and it offers no explanation for its default in explaining the meaning of the statute. Therefore, I dissent.

NEWBERN, J., joins in this dissent.

DAVID NEWBERN, Justice, dissenting. Justice Dudley's dissenting opinion expresses my views, but if we were to get further into the merits of this case, as does the majority opinion, I

have another basis for disagreement, hence this separate opinion.

As recognized by the majority, in order for a terminable interest to qualify for the marital deduction, the surviving spouse must be entitled to all the income from the property, payable annually or at more frequent intervals. 26 U.S.C. 2056(b)(7). Prior to execution of the second codicil, the will of Granville M. Cook provided for distribution of a share of the estate outright to Mrs. Cook and a share in trust for Mrs. Cook with the income to be distributed to her at least quarterly. The second codicil changed the will to say that all property previously devised to Mrs. Cook would be placed in trust for her benefit but with no provision for an "at least quarterly" distribution to her of the income from the property.

Although he said in the second codicil he did not intend to reduce the bequest to his wife, Mr. Cook clearly did so. He converted a bequest to his wife to a bequest to a trust. It is a trust which did not exist prior to the execution of the second codicil. Instead of the trustees being, as in the trust created in the original will, Mrs. Cook and People's Bank and Trust Company, as co-trustees, the sole trustee of this new trust is the Bank. In addition, Mr. Cook stated that Peoples Bank & Trust Company was to receive in trust for his wife *"all funds"* which he previously designated as bequests to his wife. By that language he placed the property given outright to Mrs. Cook in the new trust in addition to the proceeds of the first trust in which Mrs. Cook was a trustee.

To say that the second codicil did not reduce or change the bequest to Mrs. Cook because Mr. Cook said it did not is a little specious. If I say in today's will, "I devise blackacre to A," and then in tormorrow's codicil, "I devise blackacre to B, but it is not my intent to reduce the devise I made yesterday to A," the instruments could be interpreted to result in a devise of blackacre to B. In that event, the devise to A has most certainly been reduced.

The creation of the new trust in the second codicil is inconsistent with the provisions of the will and the first codicil creating the first trust. Construction of the provisions in a will and codicil may be different from that which may be given to the same

provisions in a will, since the mere making of a codicil raises an inference of a change of intention. *Driver* v. *Driver*, 187 Ark. 875, 63 S.W.2d 274 (1933). When a will and a codicil are inconsistent, the codicil, being the last expression of the testator's desires, is to be given precedence. *Ragland* v. *Commercial National Bank of Arkansas*, 276 Ark. 418, 635 S.W.2d 258 (1982); *Driver* v. *Driver, supra.* In this case, the effect of Mr. Cook's second codicil was to create a new trust. As the provision creating this trust is inconsistent with the provisions in the will and first codicil creating the first trust and devising 1/2 of his estate outright to Mrs. Cook, the second codicil takes precedence over the will and first codicil. As the new trust created in the second codicil does not contain a provision requiring the trustee to distribute income to Mrs. Cook annually or at more frequent intervals, it should not qualify for the marital deduction.

In *Wisely* v. *United States*, 893 F.2d 660 (4th Cir. 1990), the Court held that the marital trust's silence as to the frequency of income payments, as well as the fact that the trust granted the trustees discretion to accumulate any income they deemed unnecessary for care and support of the testator's spouse in a manner in which she was accustomed, disqualified the trust for the marital deduction. The majority attempts to distinguish that case by pointing out that Mr. Cook's will and codicils do not expressly direct the trustees to accumulate and add to the corpus of the trust what is not used for Mrs. Cook's care and support. In this case, as in *Wisely*, it is material that, by the terms of the new trust, the trustees have the sole discretion to determine how much income is necessary for Mrs. Cook's support and when the income should be given. As Mrs. Cook is given no right to compel distribution of the income to her, and the trustees are not to distribute the corpus of the trust to anyone else, that which is not given to Mrs. Cook will automatically accumulate and be added to the corpus. *Cf. Friedman* v. *United States*, 364 F.Supp. 484 (1973), which reached the contrary conclusion based on a Georgia statute requiring annual distribution in these circumstances.

The lack of any provision for annual or more frequent distribution of the income, and the fact that Mrs. Cook is given no authority to compel distribution of the income to her from the trust created by the second codicil disqualified the trust for the marital deduction.

I respectfully dissent.

DUDLEY, J., joins in this dissent.