865 A.2d 590

**COMPTROLLER OF the TREASURY**

v.

**Blaine T. PHILLIPS, Executor of the Estate of Donald P. Ross, Jr.**

**No. 46, Sept. Term, 2004.**

Court of Appeals of Maryland.

Jan. 13, 2005.

Gerald Langbaum, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., John K. Barry, Asst. Atty. Gen., on brief), for petitioner.

Thomas P. Sweeney (Michael R. Stein, Richards, Layton & Finger, Wilmington, Richard L. Counts, III, Leigh R. Melton, Wheeler, Parker, Thompson & Counts, LLP, Easton, on brief), for respondent.

Argued before BELL, C.J. RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

In this case, we determine whether the Comptroller of the Treasury may impose Maryland estate tax on an estate that has no federal estate tax liability due to its utilization of the federal credit for tax on prior transfers. The Maryland Tax Court and the Circuit Court for Talbot County held that the Comptroller may not assess Maryland estate tax in such circumstances. We affirm.

## I.

### Background

Since 1926, the federal government has shared estate tax revenue with states through an eighty percent credit for state death taxes, now codified as I.R.C. § 2011 (2004).[1] *See Page v. Comptroller*, 270 Md. 725, 729, 313 A.2d 691, 693 (1974). The General Assembly enacted the Maryland estate tax in 1929, 1929 Md. Laws Chap. 275, to take advantage of this federal revenue sharing. *See Page*, 270 Md. at 729, 313 A.2d at 693. As such, the Maryland estate tax, unlike the Maryland inheritance tax, is linked directly to the federal estate tax. In *Comptroller v. Jameson*, 332 Md. 723, 633 A.2d 93 (1993), we provided an overview of the interplay between these three taxes:

"The United States imposes a federal estate tax which is payable nine months after death. On the federal estate tax return, estates are permitted to claim a credit, up to a specified amount, for state death taxes actually paid to any of the fifty states. This credit is a method of revenue sharing in which the federal government is diverting some federal estate tax revenue to the states.

---

1. I.R.C. § 2011 (2004) provides in part as follows:

 "(a) **In general.**—The tax imposed by section 2001 [the estate tax] shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia, in respect of any property included in the gross estate (not including any such taxes paid with respect to the estate of a person other than the decedent)."

"The Maryland inheritance tax is a tax imposed on the privilege of receiving property. *See* Maryland Code (1988) § 7–202 of the Tax–General Article.... The Maryland inheritance tax is not integrated with the federal estate tax; in other words, the calculation of the Maryland inheritance tax is not dependant upon the federal estate tax system in any way.

"On the other hand, the Maryland estate tax is completely integrated with the federal estate tax. The structure of the Maryland estate tax is referred to as a 'pick-up' tax. This means that, if the federal credit for state death taxes allowable by the Internal Revenue Code exceeds the Maryland inheritance tax, an estate must pay Maryland estate tax to pick up the difference between the credit and the state inheritance tax. Stated more succinctly, the inheritance tax is deducted from the federal estate tax credit to determine the amount of Maryland estate tax. By providing for full use of the federal credit for state death taxes, the Maryland estate tax statute shifts taxes that would otherwise be paid to the federal government to the state treasury...."

*Id.* at 725–26, 633 A.2d at 94 (citations omitted).

## II.

### *Facts*

Appellant is Comptroller of the Treasury of Maryland, an official charged with, *inter alia,* the duty to assess and collect Maryland estate tax.

Appellee is executor of the estate of Donald P. Ross, Jr. ("decedent"), a Delaware resident who died on June 30, 2000. The majority of decedent's estate was located outside Maryland, but he left a one-third, undivided interest in real property known as 6523 Shingle Row Road in Royal Oak, Talbot County. The date-of-death value of this interest was $1,750,000. Decedent also left a one-third interest in the tangible property located at that address. The date-of-death

value of the tangible property for federal estate tax purposes was $29,053.67.

Pursuant to decedent's will, his interest in the Maryland tangible property passed to his issue, per stirpes.[2] The residue of decedent's estate, which included his interest in the Maryland real property, passed to a trust established on November 1, 1999 (the "1999 Trust"). Under the terms of the 1999 Trust, the residue of the estate was distributed immediately into two new trusts: the "Marital Trust" and the "Residuary Trust." The amount of property to be set aside in the Marital Trust was specified as follows in the 1999 Declaration of Trust:

> "Trustee shall set aside, as the 'Marital Trust,' property with the smallest aggregate value needed to reduce Trustor's federal estate tax to the lowest possible amount after taking into account all credits and deductions against such tax available to Trustor's estate, except to the extent that the use of any such credit (other than the unified credit) would increase state death taxes."

---

**2.** Representation per stirpes is defined for intestate succession in Md. Code (1974, 2001 Repl.Vol., 2004 Cum.Supp.), § 1–210 of the Estates and Trusts Article, and for wills in § 1–210.1. Specifically, § 1–210.1(b) defines per stirpes distribution to the issue of one specific person as follows:

> "(1) On the occurrence of the event designated by the will, the property to be distributed shall be divided into as many equal shares as there are children of the person whose issue are to take by representation or per stirpes, excluding those children who were not living at the time of the occurrence of the event and did not leave issue who were living at the time of the occurrence of the event.
> (2) Distribution of the shares shall be made as follows:
> (i) One share shall be distributed to each child, who was living at the time of the occurrence of the event; and
> (ii) One share shall be distributed among the issue of each child who was not living but who left issue who were living at the time of the occurrence of the event in the same manner distribution is to be made to the issue of one specified person as provided by this subsection."

Put more simply, per stirpes means "proportionately divided between beneficiaries according to their deceased ancestor's share." Black's Law Dictionary 1181 (8th ed.2004).

Accordingly, sufficient assets were distributed from the 1999 Trust into the Marital Trust to reduce decedent's federal estate tax liability to zero. Among these assets was the Maryland real property.

Decedent's mother, Wilhelmina duPont Ross, predeceased her son by only five days. From her estate, decedent inherited assets valued at $5,030,307.86. Because Wilhelmina Ross predeceased decedent by less than two years, decedent's estate was entitled to a $2,263,471.57 credit for tax on prior transfers under I.R.C. § 2013 (2004).[3] This credit exceeded all federal estate taxes owed on the inherited assets.

On behalf of decedent's estate, appellee filed a United States Estate (and Generation–Skipping Transfer) Tax Return ("Form 706") on October 1, 2001. On Form 706, appellee made, *inter alia,* the following entries:

"10. Gross Estate Tax: 2,484,021.57

\* \* \*

13. Allowable unified credit: 220,550.00

\* \* \*

15. Credit for state death taxes: 0.00

\* \* \*

19. Credit for tax on prior transfers: 2,263,471.57

\* \* \*

21. Net estate tax: 0.00"

Appellee filed a Maryland Estate Tax Return ("Form MET 1") on the same date. On Form MET 1, appellee made, *inter alia,* the following entries:

---

**3.** I.R.C. § 2013 (2004) provides in part as follows:

"**(a) General rule.**—The tax imposed by section 2001 [the estate tax] shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property ... to the decedent by or from a person ... who died within 10 years before, or within 2 years after, the decedent's death...."

"8. Maximum credit for state death taxes (from line 15, federal Form 706): 0

\* \* \*

10. Percentage of Maryland estate to total gross estate: 13.18

\* \* \*

11. Maryland apportioned credit (line 10 times line 8): 0.00

\* \* \*

12. Maryland estate tax liability (from line 8 or line 11, whichever is applicable): 0.00"

Decedent's estate did not remit any Maryland estate tax to appellant.

On October 18, 2001, appellant sent a Deficiency Notice to appellee, indicating a Maryland estate tax liability of $48,451.09 plus interest. Appellee filed a Protest, setting out a legal argument in support of his computation of zero Maryland estate tax liability. Appellant subsequently sent appellee an Assessment for the deficient tax plus interest,[4] and appellee appealed to the Maryland Tax Court (an administrative agency).[5] The Tax Court held a hearing on November 14, 2002 and issued an oral decision reversing the Assessment, finding that no Maryland estate tax was due. The Tax Court issued an order to this effect on April 1, 2003.

Appellant sought judicial review in the Circuit Court for Talbot County. Judge William S. Horne held a hearing on November 21, 2003 and issued an opinion affirming the Tax Court on December 8, 2003. Appellant next appealed to the Court of Special Appeals. Before that court could consider the case, we granted certiorari on our own initiative to resolve

---

**4.** Md.Code (1988, 2004 Repl.Vol.), § 13–410 of the Tax–General Article mandates that a "tax collector shall mail a notice of assessment under this title to the person or governmental unit against which an assessment is made."

**5.** Md.Code (1988, 2004 Repl.Vol.), § 13–510(a)(1) of the Tax–General Article authorizes a person aggrieved by a tax assessment to appeal to the Tax Court.

an area of confusion in Maryland estate tax law. 381 Md. 677, 851 A.2d 596 (2004).

On appeal, appellant raises one issue: whether the Maryland Comptroller may assess state estate tax against an estate that has no federal estate tax liability due to its utilization of the federal credit for tax on prior transfers.[6]

### III.

### *Standard of Review*

This case raises only an issue of law, as the parties agreed to a stipulation of facts before the Tax Court. When this Court reviews an administrative agency's decision, we employ the same statutory standards as would the Circuit Court; the inquiry is whether the administrative agency erred, not whether the Circuit Court erred. *See Spencer v. State Board of Pharmacy*, 380 Md. 515, 523–24, 846 A.2d 341, 346 (2004). Under the Maryland Administrative Procedure Act, Md.Code (1984, 2004 Repl.Vol.), § 10–222 of the State Government Article, we determine the correctness of the agency's legal conclusions and may substitute our judgment for that of the agency. *Id.* at § 10–222(h)(3)(i)–(iv); *see Charles County v. Vann*, 382 Md. 286, 295, 855 A.2d 313, 319 (2004). Specifically, in reviewing questions of law answered by the Tax Court, we have said that "a reviewing court is under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law." *Comptroller v. Gannett*, 356 Md. 699, 707, 741 A.2d 1130, 1135 (1999) quoting *Ramsay, Scarlett & Co. v. Comptroller*, 302

---

6. In addition, appellee claims that it would be unconstitutional for the Comptroller to assess Maryland estate tax when the "Maryland portion" of the estate's assets did not generate any federal estate tax. Appellee raised this issue before the Tax Court and Circuit Court. Both found it unnecessary to address the issue, because they ruled for appellee on the statutory issue. As we affirm the Circuit Court's upholding of the Tax Court's decision on the statutory issue, we too do not address this constitutional issue. *See Telnikoff v. Matusevitch*, 347 Md. 561, 579, 702 A.2d 230, 239 n. 15 (1997) (noting "the established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground").

Md. 825, 834, 490 A.2d 1296, 1301 (1985). We have held, though, that agency legal interpretations of the statute it administers are entitled to some deference. *See Vann,* 382 Md. at 295–96, 855 A.2d at 319.

 Determining whether the Comptroller may assess estate tax in this case depends upon an interpretation of the Maryland statute defining the relationship between federal and state estate taxes: Md.Code (1988, 1997 Repl.Vol., 2001 Cum.Supp.), § 7–304 of the Tax–General Article. The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727, 730 (2004). In ascertaining legislative intent, we first examine the plain language of the statute. *Melton v. State,* 379 Md. 471, 476–77, 842 A.2d 743, 746 (2004). We do not examine the plain language in isolation. Rather, we consider the particular and broad objectives of the legislation and the overall purpose of the statutory scheme. *See Handy v. State,* 357 Md. 685, 705, 745 A.2d 1107, 1117 (2000) (quoting *Rose v. Fox Pool,* 335 Md. 351, 359, 643 A.2d 906, 910 (1994) and cases cited therein). If the plain language of the statute is unambiguous and is consistent with the statute's apparent purpose, we give effect to the statute as it is written. *See Melton,* 379 Md. at 477, 842 A.2d at 746. When there is more than one reasonable interpretation of a statute, the statute is ambiguous. *Melton,* 379 Md. at 477, 842 A.2d at 746. If the statutory language is ambiguous or unclear, we look to legislative history, prior case law, and statutory purpose. *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004). The statute must be construed as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory. *Rose,* 335 Md. at 359, 643 A.2d at 909–910.

## IV.

### *Positions of the Parties*

The parties present divergent interpretations of § 7–304.

Section 7–304 provides: [7]

> "(a) *'Federal credit' defined.*—In this section, 'federal credit' means the maximum credit for death taxes paid to any state that is allowable under § 2011 of the Internal Revenue Code against the federal estate tax of a decedent as reduced by the proportion that the amount of the estate not included in the Maryland estate bears to the amount of the entire estate of the decedent.

> "(b) *In general.*—(1) Except as otherwise provided in this subsection, the Maryland estate tax is the amount, if any, by which the federal credit exceeds the total of death taxes other than the Maryland estate tax that:

> (i) are imposed by a state on property included in the Maryland estate;

> (ii) are allowable in computing the federal credit; and

> (iii) except as provided in § 13–906 of this article, have actually been paid out of the Maryland estate and received by the appropriate unit of this State.

> (2) The Maryland estate tax may not exceed the amount whose timely payment in accordance with federal law would reduce the amount of the federal estate tax payable out of the Maryland estate had this subtitle not been enacted.

---

**7.** Pursuant to 2002 Md. Laws, Chap. 440 § 17, Md.Code (1988, 2004 Repl.Vol.), § 7–304 of the Tax–General Article now includes "Subject to § 7–309 of this subtitle" at the beginning of subsections (a) and (b)(2). As part of the same amendment, the General Assembly rewrote § 7–309, "Effect of Change in Federal Estate Tax Law," to maintain the Maryland estate tax even were the federal estate tax repealed. Section 7–309 was again amended in 2004. 2004 Md. Laws, Chap. 430 § 4. The revised § 7–304 and, by extension, the new § 7–309 are not applicable to the case *sub judice,* because decedent died in June 2000, and the 2002 amendment only applies to decedents dying after December 31, 2001. 2002 Md. Laws, Chap. 440 § 30. We could imagine an argument that the use of "allowable" in § 7–309(b)(1)(i) and (2)(i) as amended in 2002 is relevant for interpreting "allowable" in § 7–304. We will not decide or even consider this argument as neither party has raised it-to do otherwise would be unfair to the parties, who have had no opportunity to brief this issue. *See* Md. Rule 8–131.

"(c) *Failure to take full federal credit.*—The Maryland estate tax is not affected by a failure to take or preserve the federal credit."

According to appellant, § 7–304(c) mandates that an estate must pay state estate tax regardless of whether the estate claimed the federal credit for state death taxes. Appellant views § 7–304(c) as dictating that appellee's choice to take the federal credit for tax on prior transfers instead of the credit for state death taxes has no bearing on the Maryland estate tax. In other words, the Maryland estate tax is based on the *potential* state death taxes credit, rather than the actual state death taxes credit taken.

First, appellant asserts that the plain meaning of § 7–304(c) is that the estate's choice to take another credit on the federal Form 706 is irrelevant for Maryland estate tax purposes. Second, appellant argues that "allowable" in § 7–304(a) means potential, further indicating that § 7–304(c) should be interpreted as making irrelevant whether the estate actually took the federal credit. Finally, appellant cites as support a statement we made in *Jameson* about the meaning of § 7–304(c): "The plain meaning of this sentence is that Maryland estate tax is calculated based upon what the maximum federal credit available to the estate is; not on what the executor of the estate chooses to claim as a federal credit." 332 Md. at 738, 633 A.2d at 100.[8] Appellant maintains that this sentence evinces our adoption of appellant's position that the executor's choice is irrelevant for determining whether to assess Maryland estate tax.

Appellant argues that § 7–304(b)(2) does not contradict its interpretation of the statute. Appellant sees § 7–304(b)(2) as a counterpart to § 2011(e) of the Internal Revenue Code. Section 2011(e) states: "The credit provided by this section

---

8. The provision we reviewed in *Comptroller v. Jameson*, 332 Md. 723, 633 A.2d 93 (1993), was Md.Code (1957, 1983 Repl.Vol.) Art. 62A, § 2. We noted that the provision was recodified subsequently without substantive change as § 7–304(c). *Jameson,* 332 Md. at 738, 633 A.2d at 100 n. 7.

shall not exceed the amount of the tax imposed by section 2001, reduced by the amount of the unified credit provided by section 2010." I.R.C. § 2011(e) (2004). In other words, § 2011(e) mandates that the state death taxes credit may not exceed the federal estate tax. According to appellant, § 7–304(b)(2) plays the same role; when the calculation of the state death taxes credit is greater than the federal estate tax, the Comptroller cannot assess a state estate tax greater than the federal estate tax.

Appellee responds by interpreting § 7–304 to impose Maryland estate tax only when federal estate tax liability exists. Appellee interprets the statute as creating a distinction between: (1) the amount "allowable" as the federal credit under the § 7–304(a)'s definition, and (2) the maximum estate tax that the Comptroller may impose under § 7–304(b)(2). While the calculation of the Maryland estate tax is determined by employing § 7–304(b)(1)'s arithmetic formula using the "allowable" amount of the federal credit, § 7–304(b)(2) adds that the Comptroller may not impose the estate tax unless the state death taxes credit reduces the federal estate tax. In other words, § 7–304(b)(2) mandates appellee's position that the Comptroller may not assess a Maryland estate tax when the estate owed no federal estate tax even without taking the state death taxes credit. Appellee's interpretation of § 7–304(c) is based on his interpretation of § 7–304(b)(2). He asserts that § 7–304(c)'s instruction to disregard an estate's failure to take the credit only applies when federal estate tax liability exists.

## V.

### A. *Purpose of the Statute*

While the specific issue we address in this case is a matter of first impression in Maryland, we have reviewed § 7–304 and its predecessor on a number of occasions. *See, e.g., Comptroller v. Jameson,* 332 Md. 723, 633 A.2d 93 (1993); *Page v. Comptroller,* 270 Md. 725, 313 A.2d 691 (1974); *Comptroller v. Davidson,* 234 Md. 269, 199 A.2d 360 (1964); *Cross v. Downes,* 164 Md. 216, 164 A. 758 (1933). We will review in

depth our decision in *Jameson*, as our analysis in that case of the purpose and structure of the Maryland estate tax is instructive.

In *Jameson*, the estate failed to file its Maryland estate tax return by the filing deadline. The estate did file its federal estate tax return and claimed the state death taxes credit. Subsequently, the estate filed its two Maryland inheritance tax returns and paid the taxes due. Months later, and more than two years overdue, the estate filed its Maryland estate tax return. As the state inheritance taxes exceeded the state death taxes credit taken, the estate calculated that it owed no Maryland estate tax.[9] The Comptroller, though, assessed the estate for interest on the unpaid estate tax covering the time until the inheritance tax was paid, as there was estate tax liability until the inheritance taxes reduced the liability to zero. 332 Md. at 726–28, 633 A.2d at 94–95. We held that the Comptroller could collect interest on the late payment of state estate tax, even though the subsequent payment of state inheritance taxes eliminated the original estate tax liability. *Id.* at 740, 633 A.2d at 101.

In reaching this holding, we analyzed the structure and purpose of what is now § 7–304. As quoted *supra*, we defined the Maryland estate tax as a "pick-up" tax with its purpose to "shift[ ] taxes that would otherwise be paid to the federal government to the state treasury." *Id.* at 726, 633 A.2d at 94. *See generally Estate of Fasken*, 19 Cal.3d 412, 138 Cal.Rptr. 276, 563 P.2d 832 (1977) (en banc) (detailing in great depth the history of the federal state death taxes credit and state estate taxes designed to "pick-up" the credit). We noted that the Maryland statute provides for "full use" of the federal credit. *Jameson*, 332 Md. at 726, 633 A.2d at 94. Thus, the Maryland estate tax is not an additional tax. Rather, it takes full advantage of federal revenue sharing by capturing the maximum amount of estate tax revenue that the federal govern-

---

**9.** Under § 7–304(b)(1), Maryland death taxes other than the estate tax are deducted from the federal credit to determine the Maryland estate tax.

ment authorizes. *See* Robert A. Rombro & Bonnie A. Travieso, *Maryland Death Taxes, in* 1 *Maryland Taxes* § 5.52 (MICPEL 2001) (noting that "The Maryland estate tax is not an additional tax imposed on the taxpayer, since it only causes to be paid to the state, rather than the federal government, the difference between the inheritance tax paid to any state and the maximum credit allowable by the federal statute with respect to death taxes paid to any state"); H. Vernon Eney, *Death and Taxes—Maryland Style*, 17 Md. L.Rev. 101, 111 (1957) (noting that "The Maryland estate tax is, therefore, not an additional tax at all since it is carved out of the Federal estate tax").[10]

Applying *Jameson* to the case *sub judice,* we conclude that appellant's position is inconsistent with the purpose of § 7–304. Maryland's estate tax is integrated completely with the federal estate tax; it is a "pick-up" tax calculated by subtracting the other state death taxes from the federal state death taxes credit. This integrated structure reflects the credit's purpose of diverting some federal estate tax revenue to the states and § 7–304's purpose of capturing that revenue.

Appellant would assess Maryland estate tax even when an estate has no federal estate tax liability and, consequently, has not taken the federal credit for state death taxes. In other words, in situations in which an estate has no federal liability, appellant would transform Maryland's estate tax from a revenue sharing instrument that does not increase the estate's tax burden into a new tax. That position is inconsistent with the integrated relationship between the federal and state taxes. Simply put, Maryland cannot benefit from revenue sharing when there is no revenue to share. In the absence of statuto-

---

10. The Office of the Attorney General has long recognized that the Maryland estate tax is a pick-up tax, rather than an additional tax. In 1933, Judge William L. Henderson, then Assistant Attorney General, described the Maryland estate tax as "Maryland's right to share with the Federal Government in the tax imposed upon the Maryland estate." 18 Op. Att'y Gen. 511, 512. In 42 Op. Att'y Gen. 432, 433 (1957), the Attorney General and Assistant Attorney General cited Judge Henderson's description and concluded, "Thus, the Maryland and federal estate taxes are viewed as a single entity."

ry authorization, the Comptroller may not transform § 7–304 into a tax increase. To hold otherwise would ignore the Maryland estate tax's purpose of accepting the federal government's offer to share revenue.

## B. *Statutory Provisions*

Appellant's reading of "allowable" in § 7–304(a) as "potential" is contrary to the plain language of the statute. There is no reason to believe that the word "allowable" is meant to remove the federal state death taxes credit and the Maryland estate tax from the role of revenue sharing instruments. Appellant only can reach this strained result by viewing "allowable" as an isolated word. The entire phrase reads: " 'federal credit' means the maximum credit for death taxes paid to any state that is allowable under § 2011 of the Internal Revenue Code against the federal estate tax of a decedent." [11] The plain meaning of this phrase is that calculating the Maryland estate tax under § 7–304(b)(1)'s formula requires using as much of the federal state death taxes credit as federal law permits. The purpose of the provision is to ensure that the State picks up the entire amount made available to it by the federal credit. When no federal estate tax is owed, because the estate has taken the tax on prior transfers credit or for any other reason, then there is no state death taxes credit "allowable."

Our reading of § 7–304(a) is compelled by the phrase "against the federal estate tax of a decedent." Appellant's

---

**11.** Neither party refers us to any case law or legislative history explaining the use of the word "allowable" in the statute. It appears that § 7–304 uses "allowable" to correspond with I.R.C. § 2011 (2004), which establishes the credit. Section 2011 defines and limits the "credit allowed." For example, § 2011(b)(1) states that "the credit allowed by this section shall not exceed" amounts listed in a table of the maximum credit for estates of varying sizes. By using the term "allowable," the Maryland legislature made clear that § 7–304 refers to the credit as defined by the federal definition and limitations. Thus, corresponding to I.R.C. § 2011(b)(1), "[i]f, because of the size of the estate, no credit was allowed on the federal estate tax return, no Maryland estate tax is imposed." Allan J. Gibber, *Gibber on Estate Administration,* § 8.63 (MICPEL 2001).

interpretation of § 7–304(a) ignores this phrase. This phrase indicates that the federal credit should not be viewed as an abstract figure; instead, it must be seen as a sum redistributed from the federal estate tax. *See Riethmann Trust v. Dir. of Revenue,* 62 S.W.3d 46, 48 (Mo.2001) (en banc) (holding that near identical language in the Missouri statute "suggests that in order to be obligated to pay the state's tax, some federal tax must be assessed").

As with § 7–304(a), we can understand § 7–304(b)(2) by looking at its plain language. Section 7–304(b)(2) states, "The Maryland estate tax may not exceed the amount whose timely payment in accordance with federal law would reduce the amount of the federal estate tax payable out of the Maryland estate had this subtitle not been enacted." [12] The plain language of this subsection is that the Maryland estate tax may not be greater than the additional federal estate tax an estate would owe were there not a state death taxes credit. Thus, the subsection mandates a calculation of what the federal estate tax liability would be without the credit for state death taxes. That the federal estate tax liability without the credit for state death taxes is reduced by another credit is irrelevant under this subsection. In this case, in the absence of a state death taxes credit, the estate would have owed no federal estate tax. Accordingly, § 7–304(b)(2) precludes appellant from assessing appellee Maryland estate tax.

---

12. This provision remains almost unchanged from the 1929 statute creating the Maryland estate tax. The wording in that statute was as follows:

> ". . . provided, however, that such 'Maryland Estate Tax' hereby imposed shall in no case exceed the extent to which its payment will effect a saving or diminution in the amount of the 'Federal Estate Tax,' payable by or out of the 'Estate' of the 'Decedent' had this Article not been enacted."

1929 Md. Laws, Chap. 275. The provision was altered for the first time in 1978 when the legislature changed "payment will" to "timely payment in accordance with federal law would." 1978 Md. Laws, Chap. 109. This change was part of the legislature's attempt, discussed *infra,* to prevent estates' failures to meet federal filing deadlines from impacting the state estate taxes due. The provision was reworded and recodified into § 7–304(b)(2) of the Tax–General Article without substantive change in 1988. 1988 Md. Laws, Chaps. 2 and 110.

Unlike §§ 7–304(a) and (b)(2), § 7–304(c) is ambiguous. Appellant reads § 7–304(c) as stating that an estate's decision to take another federal credit instead of the credit for state death taxes does not affect the Maryland estate tax. Appellee reads the section as stating that when an estate has federal estate tax liability, its failure to take or preserve the federal credit does not affect the Maryland estate tax. Viewed without reference to the legislative history, both parties' interpretations are reasonable. We, thus, look to the legislative history of § 7–304(c).

In this pursuit, we are aided again by *Jameson.* In *Jameson,* we analyzed the meaning and purpose of § 7–304(c) in response to one of the Jameson estate's arguments. The Jameson estate argued that since it had not paid the Maryland inheritance taxes at the time it paid its federal estate tax, a tax preparer had to enter zero as the amount of federal state death taxes credit available. The estate continued that as there was no federal credit "allowable," it owed no Maryland estate tax and could not be ordered to pay interest. 332 Md. at 737–38, 633 A.2d at 100.

Our response to the estate's argument was based on our determination that § 7–304(c) was passed to prevent such attempts to avoid estate tax through the timing of filing the respective inheritance and estate tax forms. We disagreed with the estate's argument about the effect of the timing of payment, holding that the General Assembly directly rejected the argument through its enactment of what is now § 7–304(c). We stated as follows:

"Although the above creative reasoning may have at one time had some merit, a 1978 amendment to Article 62A, § 2 clearly rejected this approach. *See* Acts of 1978, ch. 109. In House Bill 220, which became chapter 109, the legislature closed this potential loophole."

*Id.* at 738, 633 A.2d at 100. After quoting the language of § 7–304(c), we noted that the plain meaning of the provision is that the Maryland estate tax is calculated based on the maximum federal credit available to the estate, not based on

"what the executor of the estate chooses to claim as a federal credit." *Id.*

That our observation was limited to the timing of estates filing returns is clear from the following few sentences, in which we discussed the legislative history of 1978 Md. Laws, Chap. 109. For example, we quoted a House Ways and Means Committee finding that the provision would ensure that " 'the State will never again reimburse an individual who fails to submit the claim for the federal tax credit on time.' " *Id.* Thus, *Jameson* provides no basis for interpreting § 7–304(c) to authorize Maryland estate tax when an estate has no federal estate tax liability without utilizing the state death taxes credit.

A review of the available legislative history of the 1978 amendment makes clear that § 7–304(c) was adopted to address timing problems. There is no indication in the committee bill file for House Bill 220, which became Chapter 109, that the committee even considered the issue of when there is no federal estate tax liability without utilizing the state death taxes credit. Instead, the file makes clear that the bill aimed to prevent the *timing* of the estate's filings from having any impact on the state estate tax. In a letter to the Chairman of the House Ways and Means Committee, an official from the Comptroller's office explained the rationale for the bill:

"An incident occurred whereby I.R.S. disallowed a credit due to a technicality of timely filing under the Federal regulations.

"Since the credit was not allowed by I.R.S., the personal representative filed with the State of Maryland, for refund of the tax that was paid.

"The Maryland Tax Court upheld the refund of the taxes paid.

"The Attorney General's office recommended the changes suggested in House Bill 220. The amount of the Maryland Estate tax payable under this section is not altered, diminished, or affected in any way by the failure of the estate's

representative to properly take and preserve the maximum state death tax credit allowable under Federal law."

Letter from B.T. Stehley, Chief of the Miscellaneous Revenue Division, Comptroller of the Treasury, to the Chairman of the House Ways and Means Committee (Feb. 2, 1978).[13] Thus, the bill's purpose was to address a specific case requiring the State to refund the state estate tax, because the estate's representative had made a filing error in the federal returns— *i.e.* had failed to "preserve the federal credit" as stated in § 7–304(c).

That § 7–304(c) prevents estates' timing failures from having an effect on the calculation of the Maryland estate tax is further supported by a review of the "Committee Findings" section of the House Ways and Means Committee's report summarizing House Bill 220. We quoted these Committee Findings in part in *Jameson.* 332 Md. at 738, 633 A.2d at 100. The entire Committee Findings consisted of two sections: (1) a "Present Situation" section which briefly summarized the integrated relationship between the federal and state estate taxes and quoted part of Stehley's letter, and (2) a "With Bills Passage" section which stated in full:

"Failure of an individual to file for the Federal tax credit will in no way alter, diminish or affect the amount of the Maryland Estate Tax due."

"In other words, the State will never again reimburse an individual who fails to submit the claim for the tax credit on time."

House Ways and Means Committee, House Bill 220 (1978). The first sentence paraphrases the wording of the amendment. The second sentence defines that wording as preventing an estate's untimely filings from costing the State revenue from the federal government. In sum, § 7–304(c) provides no support for appellant's position that an estate is liable for state

---

**13.** The bill file contains an identical letter, dated March 10, 1978, addressed to the Chairman of the Senate Finance Committee.

estate tax even when the estate is not liable for federal estate tax.

After interpreting each provision, we must ensure that our construction of § 7–304 as a whole does not render any of its parts superfluous or meaningless. Considering all the provisions together, § 7–304 is a coherent whole. Together, § 7–304(a), (b), and (c) provide that the Maryland estate tax picks up the entire amount that the federal credit on state death taxes redistributes to the State—no more, no less. Subsection (a) states that Maryland picks up the full amount of the federal credit; (b)(1) provides the formula for calculating the tax, subtracting other death taxes; (b)(2) limits the Maryland estate tax to the federal credit; and (c) ensures that an estate's failures cannot cost the State revenue.

After reviewing the purpose and the meaning of the statute, we reject appellant's position. Accordingly, we hold that when an estate has no federal estate tax liability, without utilizing the federal credit for state death taxes, the Comptroller may not assess the estate Maryland estate taxes.[14]

Our holding is consistent with the holdings of other states addressing this issue. The facts in each of these cases are near identical to the facts of this case. In each case, a decedent inherited assets from a relative or friend less than two years before the decedent died. The decedent's estate representative claimed a credit for tax on prior transfers on the federal estate tax return, resulting in zero federal estate tax liability. With no liability, the estate did not claim the federal credit for state death taxes. The Comptroller then assessed the estate state estate tax.

---

**14.** At least one Maryland commentator has reached the same conclusion. Allan J. Gibber wrote,

"The other federal deductions and credits are first utilized to determine if any federal tax is due. It is not necessary to first utilize the allowable state credit before reducing the tax by the unified credit. The Maryland estate tax is only imposed if by reason of the credit there would be a reduction of federal taxes."

Gibber, *supra* note 11, § 8.63.

In *Riethmann Trust v. Dir. of Revenue*, 62 S.W.3d 46 (2001) (en banc), the Missouri Supreme Court applied a statute with similar wording to the Maryland statute [15] and reached the same result as we do. Based on the state estate tax's purpose of picking up the federal credit, the court concluded that "the overall tax liability of the estate is not increased by Missouri law; the state only gets to take a piece of the federal tax pie." 62 S.W.3d at 47. The court then held that the term "allowable" meant "the amount of credit permitted against the actual federal estate tax payable after all other credits are taken . . ." *Id.* at 48.

The court offered a series of rationales for its holding. First, the clear legislative purpose was to ensure "the state shared in the federal tax pie," not to create a new tax. *Id.* Second, as cited *supra*, by augmenting "allowable" with "against the federal estate tax," the legislature expressed its intent that federal tax must be assessed in order for their to be a state estate tax. *Id.* Third, under Missouri law, an ambiguous statute imposing a tax normally is construed in favor of the taxpayer and against the State. *Id.*[16]

In *In re Estate of Lacks*, 255 Mich.App. 555, 662 N.W.2d 54 (2003), the Michigan Court of Appeals also reached the same

---

**15.** Mo.Rev.Stat. § 145.011 (2004) provides as follows:

"A tax is imposed on the transfer of every decedent's estate which consists in whole or in part of property having a tax situs within the state of Missouri. The Missouri estate tax shall be the maximum credit for state death taxes allowed by Internal Revenue Code Section 2011 but not less than the maximum credit for state death taxes allowable to the estate of a decedent against the federal estate tax by Section 2011 or any other provision of the laws of the United States."

**16.** We also find persuasive the Missouri Supreme Court's response to the State's argument that the state death taxes credit must be taken before the tax on prior transfers credit, because the state death taxes credit is listed above the tax on prior transfers credit on the federal estate tax form, Form 706. The court responded that the order on the form is irrelevant, as the federal government "does not care" which credit an estate takes, and the order on the federal form reveals nothing about the state legislature's intent. *Riethmann Trust v. Dir. of Revenue*, 62 S.W.3d 46, 49 (2001) (en banc).

conclusion based on a statute with similar language.[17] After noting that Michigan's estate tax was a pick-up tax and that the federal credit for tax on prior transfers is unrelated to the credit for state death taxes, *Id.* at 56, 58, the court held that "respondent's position that state estate tax should be computed before and independent of federal deductions or credits is clearly contrary to our state and federal estate tax scheme." *Id.* at 58.

In *Dickinson v. Maurer*, 229 So.2d 247 (1969), the Florida Supreme Court reviewed the State's constitutional provision authorizing Florida estate pick-up taxes[18] and the statute implementing the provision.[19] The court held that these provi-

---

**17.** Mich. Comp. Laws § 205.232(1) (2003) provides as follows:

"A tax is imposed upon the transfer of the estate of every person who at the time of death was a resident of this state. The tax is equal to the maximum allowable federal credit under the internal revenue code for estate, inheritance, legacy, and succession taxes paid to the states. This tax shall be reduced by the amount of all estate, inheritance, legacy, and succession taxes paid to states other than Michigan, which amount shall not exceed an amount equal to the proportional share of that maximum allowable federal credit that the gross value of all real and tangible personal property located in states other than this state bears to the gross value of all property included in the decedent's gross estate wherever located."

**18.** At the time of *Dickinson v. Maurer*, 229 So.2d 247 (1969), Article IX, § 11 of the Florida Constitution of 1885 provided in part:

"... but the power of the Legislature to levy such Inheritance taxes, or Estate taxes in this State, shall exist only so long as, and during the time, a similar tax is enforced by the United States against Florida Inheritances or Estates and shall only be exercised or enforced to the extent of absorbing the amount of any deduction or credit which may be permitted by the laws of the United States ... as a deduction or credit against such similar tax of the United States applicable to Florida Inheritances or Estates."

*Id.* at 247.

**19.** At the time of *Dickinson*, Fla. Stat. Ann. § 198.02 provided as follows:

"A tax is imposed upon the transfer of the estate of every person who, at the time of death, was a resident of this state, the amount of which shall be a sum equal to the amount by which the credit allowable under the applicable federal revenue act for estate, inheritance, legacy and succession taxes actually paid to the several states shall exceed the aggregate amount of all constitutionally valid estate,

sions were intended to avail Florida of the federal credit's revenue sharing "without increasing by one jot or one title the total tax burden" on Florida estates. *Id.* at 249 (citation omitted).[20]

Similarly, in *Estate of Turner v. Dep't of Revenue,* 106 Wash.2d 649, 724 P.2d 1013 (1986) (en banc), the Washington Supreme Court held that a voter initiative authorizing the Washington estate tax was intended as a pick-up tax, and, thus, the state estate tax applied only to estates required to pay federal estate tax.[21] *Id.* at 1016. To hold otherwise, the court reasoned, would defeat the revenue sharing purpose of the pick-up tax and would increase the estate's tax obligations. *Id. See also New York Trust Co. v. Doubleday,* 144 Conn. 134, 128 A.2d 192, 197 (1956) (holding that a widow who had no federal estate tax liability because of the federal marital deduction had no state estate tax liability, since "our statute incorporates within itself the provisions of the federal estate tax statute, governing the computation of the federal estate tax, including all of the provisions of the latter statute for exemptions and deductions").[22] *But see Estate of Eberbach v. State, Dep't of Revenue,* 512 N.E.2d 902, 905 (Ind. Tax

---

inheritance, legacy and succession taxes actually paid to the several states of the United States (other than this state) in respect to any property owned by such decedent or subject to such taxes as a part of or in connection with his estate."
*Id.* at 247–48.

20. While the statute was similar to the Maryland statute, the court relied primarily upon the constitutional provision, which has no parallel in Maryland law.

21. The court reviewed Wash. Rev.Code § 83.100.020(3), which, at the time the decision was written, stated in part: " 'Federal credit' means the maximum amount of the credit for estate death taxes allowed by [I.R.C.] section 2011 for the decedent's net estate . . ." *Estate of Turner v. Dep't of Revenue,* 106 Wash.2d 649, 724 P.2d 1013, 1014 (1986) (en banc).

22. The Connecticut statute is clearer in its intent than Maryland or the other referenced states' statutes as it specifically identifies the state estate tax liability as eighty per cent of the federal liability. *New York Trust Co. v. Doubleday,* 144 Conn. 134, 128 A.2d 192, 197 (1956).

Ct.1987) (holding that the State could not assess estate tax when the federal prior transfers credit eliminated all federal estate tax liability, but partially relying upon the Indiana statute's use of the word "allowed" instead of "allowable").

We have found one contrary case, but it is distinguishable. In *Estate of Kelly v. Commissioner of Revenue*, 1991 WL 278273, the Minnesota Tax Court held that an estate was liable for Minnesota estate tax even though the tax on prior transfers credit had eliminated all federal estate tax liability. The Tax Court relied upon the Minnesota statute's use of (1) "not less than" in declaring the intent of the statute to be that Minnesota obtain the benefit of "not less than the maximum credit allowed for state death taxes under the federal estate tax law," and (2) "allowed" in its intent section juxtaposed to "allowable" in the section imposing the tax. *Id.* at 3–4. We are not persuaded that the relied upon language supports the Minnesota Tax Court's conclusion. In any case, the Maryland statute does not contain the language relied upon by the Minnesota Tax Court.

***JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.***