896 A.2d 374

**Stanley SIEDLECKI**

v.

**EMPLOYEES' RETIREMENT SYSTEM OF BALTIMORE COUNTY, MARYLAND.**

No. 433, Sept. Term, 2005.

Court of Special Appeals of Maryland.

April 11, 2006.

Michael Marshall (Schlachman, Belsky & Weiner, PA, on brief), Baltimore, for appellant.

Suzanne T. Berger (John E. Beverungen, Acting County Atty. on brief), for appellee.

Panel SALMON, EYLER, DEBORAH S., and WOODWARD, JJ.

WOODWARD, J.

This appeal involves a question of statutory construction, specifically the meaning of section 23–58(a) of the Baltimore County Code.[1,2] Appellant, Stanley Siedlecki, served as a Balti-

---

1. Unless otherwise noted, all statutory references are to the Baltimore County Code (1988). The provisions concerning retirement for county employees were re-codified in 2003, as this case was being litigated. For clarity's sake, we shall refer in the body of the opinion to the section numbers employed in the 1988 Code, but note in footnote the section numbers used in the 2003 Code.

2. This section was re-codified at section 5–1–227(a) of the Baltimore County Code (2003).

more County police officer for fifteen years, when, on March 16, 1990, he retired on accidental disability. In 2002, at the request of the Employees' Retirement System of Baltimore County, Maryland ("ERS"), Siedlecki underwent two medical examinations. The evaluating physicians determined that he was fit to return to full-time police work. Siedlecki then challenged ERS's authority under section 23–58(a) to have him examined. The Baltimore County Board of Appeals ("board"), and thereafter, the Circuit Court for Baltimore County rejected the challenge. For the reasons explained below, we affirm the judgment of the circuit court and so uphold the board's decision.

## BACKGROUND

The facts of this case are uncontested. Siedlecki was born on January 17, 1954. He began serving as a Baltimore County police officer in 1975. In 1983, he injured his back in a car accident while on duty. He sought treatment for low back pain over the next seven years, until the county granted him accidental disability retirement, beginning on March 16, 1990. He was thirty-six years old when he retired.

In the Spring of 2002, a neighbor of Siedlecki informed ERS that Siedlecki regularly engaged in strenuous physical activity. The county conducted surreptitious surveillance of Siedlecki from this neighbor's property. It then passed on the surveillance tapes to Drs. Hung K. Cheung, the medical director for Baltimore County, and Stephen R. Matz, an orthopedic surgeon, who conducted examinations for ERS.

Pursuant to section 23–58(a), ERS directed Siedlecki to undergo a medical examination. Dr. Matz examined Siedlecki on August 7, 2002, and issued a report on that date in which he concluded that "from the standpoint of his low back Mr. Siedlecki is capable of returning to work as a police officer on a full-time basis unrestricted." Dr. Cheung examined Siedlecki on November 5, 2002, and reached a similar conclusion. The ERS's Medical Board also concluded on November 21, 2002, that Siedlecki could return to police work.

On December 10, 2002, ERS rescinded Siedlecki's accidental disability retirement benefits. He appealed the decision to the board, which held hearings on June 26, 2003, September 11, 2003, November 20, 2003, January 22, 2004, and April 8, 2004. It concluded, by a vote of two to one, that Siedlecki was able to serve as a police officer [3] and upheld ERS's decision to rescind his disability retirement benefits. The board issued a written opinion and order on August 24, 2004. Siedlecki then sought judicial review in the circuit court, which affirmed the board in a written opinion and order filed on April 11, 2005. Siedlecki noted a timely appeal to this Court.[4]

We rephrase the question for our review as whether section 23–58(a) allows periodic medical examinations of a Baltimore County police officer, who retired on an accidental disability before reaching age fifty-five and before completing twenty years of creditable service, until that officer attains the age of fifty-five. We construe the Baltimore County Code to allow for such examinations and, accordingly, to allow ERS to rescind disability retirement benefits based on those examinations and on other evidence in the record indicating that appellant was no longer disabled.

## DISCUSSION

■■ On appeal, we review the board's decision, not the circuit court's decision. *See Comptroller v. Phillips,* 384 Md. 583, 590, 865 A.2d 590 (2005). Because this appeal raises a purely legal question, we may reverse the board's decision if it

---

**3.** Siedlecki challenged the opinions of Drs. Matz and Cheung with the testimony of two other physicians who examined him and opined that he was incapable of serving as a police officer. Two out of the three members of the board "adopt[ed] and credit[ed]" the opinions of ERS's doctors over Siedlecki's doctors and found that he was fit for full-duty police work. The third member dissented and found that he was unfit for such work.

**4.** Siedlecki does not contest the factual determination made by the majority of the board, although he did seek review of that determination in the circuit court. In this appeal, he raises a legal question only, namely whether the board misinterpreted section 23–58(a).

was premised on an erroneous conclusion of law. *See Marzullo v. Kahl,* 366 Md. 158, 171, 783 A.2d 169 (2001) (citation omitted). However, "an administrative agency's[1] interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Id.* at 172, 783 A.2d 169; *see also Phillips,* 384 Md. at 590, 865 A.2d 590.

■ Section 23–58(a) provides, in part:

Once each year during the first five (5) years following the retirement of a member on a disability retirement allowance, and once in every three-year period thereafter, the board of trustees [of ERS] may and upon his application shall require *any disability beneficiary who has not yet attained the normal service retirement age to undergo a medical examination,* such examination to be made at the place of residence of such beneficiary or other place mutually agreed upon, by a physician or physicians designated by the board of trustees.

(Emphasis added). The Baltimore County Code currently does not define the phrase "normal service retirement age." We must apply the cannons of statutory construction to divine the legislature's intended definition. *See Phillips,* 384 Md. at 591, 865 A.2d 590.

First, we read the plain language of that section with the perspective of "the overall purpose of the statutory scheme." *Id.; see also Zografos v. Mayor and City Council of Baltimore,* 165 Md.App. 80, 101, 884 A.2d 770 (2005) (stating that statutory language should be read in context, not in isolation) (citation omitted). "The statute must be construed as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Phillips,* 384 Md. at 591, 865 A.2d 590. If the plain language is clear and consistent with the statutory scheme, our review ends and we give full effect to the statutory language. *See id.* If the language is unclear, we may turn to "legislative history, prior case law, and [the] statutory purpose." *Id.* Because "normal service retirement age" is not presently defined for police

officers, the parties agree that its meaning is unclear. They ask us to ascertain the legislature's intent from other, related provisions of the law and from legislative history.

Siedlecki argues that, under section 23–58(a), the County Council intended a police officer to reach "normal service retirement age" twenty years after the officer began police service. He refers us to section 23–51(d),[5] which provides, in part:

Sec. 23–51. ALLOWANCE FOR SERVICE RETIRE-MENT—POLICE.

(d) A member who retires on or after July 1, 1995 shall be entitled to receive a service retirement allowance *irre-spective of age ... provided such member shall have a minimum of twenty (20) years of creditable service.*

(Emphasis added). Siedlecki recognizes in his brief that section 23–51, by its title, refers to service retirement, not disability retirement. Yet, he argues that the twenty-year standard articulated in section 23–51 applies in either circumstance.

Siedlecki's position is that he would have become eligible for retirement in 1995, twenty years after he began serving as a police officer, but for the accidental injury in 1983. He argues that, after 1995, ERS could not subject him to periodic medical examinations, and consequently, the medical examinations required by ERS in 2002 were without lawful authority.

ERS, on the other hand, contends that "normal service retirement age" is a specific age, even if that age is not currently articulated for police officers in the Baltimore County Code. Relying on legislative history, ERS argues that the "normal service retirement age" for a police officer is fifty-five, unless the officer has completed at least twenty years of creditable service at the time of retirement, in which case the officer may retire regardless of age. ERS maintains that it was authorized to ask Siedlecki to undergo medical examina-

---

5. This section was re-codified at section 5–1–216(c) of the Baltimore County Code (2003).

tions in 2002, because he was forty-eight years old and had completed only fifteen years of creditable service when he retired in 1990.

Having reviewed the legislative history outlined by ERS, we conclude that "normal service retirement age" has the meaning ascribed to it by ERS. The phrase was first used for police officers in the Baltimore County Code in 1959, when the county divided its employees into four groups, the last of which, Group 4, included police officers and firefighters. *See* County Council of Baltimore County, Md., 1959 Leg. Sess., Bill No. 138 § 41–4. In 1959, the law stated that "[t]he normal service retirement age shall be ... the age of sixty for Group 4 members." *Id.* § 41–13. The law further provided that a police officer could retire "before attaining the normal service retirement age provided he has completed thirty or more years of c[re]ditable service." *Id.*

The 1959 law set the "normal service retirement age" for employees in Groups 1 through 3 at age sixty-five. *See id.* Because the retirement age for Group 4 members differed from that for members of Groups 1 through 3, the County Council referred to "normal service retirement age," rather than a specific numerical age, when discussing retirement in other sections of the Baltimore County Code. *See id.* §§ 41–13–19, § 41–49. Notably, at this time, the County Council replaced the phrase "age sixty-five" with "normal service retirement age" in section 41–19, which allowed for medical examinations of employees retired on disability and was the predecessor to section 23–58(a). *See id.* § 41–19. This section applied to members of Groups 1 through 4, some of whom were expected to retire at sixty-five, and others of whom were expected to retire at sixty. *See id.* Thus the 1959 law specifically tied the phrase "normal service retirement age" to a chronological age, depending on the group to which the employee belonged.

The definition of "normal service retirement age" for Group 4 members was lowered in 1967 to fifty-five. *See* County Council of Baltimore County, Md., 1967 Leg. Sess., Bill No. 49

§ 41–13. Also, the law was changed to allow an officer to retire before age fifty-five if the officer had completed at least twenty-seven and one-half years of creditable service. *See id.* In 1978, the law changed again to allow an officer to retire "before attaining his normal service retirement age" if the officer "completed twenty (20) or more years of creditable service . . . regardless of age." Baltimore County Code § 20–18 (1978).

The next notable legislative amendment to the Baltimore County Code occurred in 1994, when broad changes were made to the retirement benefits, primarily for those members of Group 4 who were employed by the fire department. *See* County Council of Baltimore County, Md., 1994 Leg. Sess., Bill No. 84–94. A new section was added to provide a service retirement allowance for fire department personnel, depending upon the attainment of certain ages and/or years of creditable service. *See id.* § 2. In so doing, the County Council found it necessary to remove the definition of "normal service retirement age" for fire department personnel from section 23–48(a).[6] *See id.* § 1. However, the County Council removed that definition from section 23–48(a) for *all* Group 4 members, which included police officers, and it did not add language anywhere else in the code defining "normal service retirement age" for police officers. *See id.* §§ 1–2. Yet the phrase "normal service retirement age" still appeared in provisions of the Baltimore County Code providing for police service retirement allowance (sections 23–49(b)–(c),[7] 23–51(b)[8]), and re-examination of disability retirees (section 23–58).

ERS convincingly argues that nothing in the preamble or language of Bill 84–94 indicates that the County Council

6. This section was re-codified at section 5-1-213 of the Baltimore County Code (2003).

7. These sections were re-codified at sections 5-1-214(b)–(c) of the Baltimore County Code (2003).

8. This section was re-codified at section 5-1-216(b) of the Baltimore County Code (2003).

intended to eliminate the definition of "normal service retirement age" for police officers. The failure of the County Council to transfer the definition of "normal service retirement age" to provisions applicable to police officers was, as ERS contends, a "drafting oversight [that] should not be permitted to eliminate the long established age of [fifty-five] as normal service retirement age for Group 4 police members."

The conclusion that the County Council intended fifty-five to be the "normal service retirement age" for police officers is buttressed by the language of section 23–60,[9] which pertains to persons who receive payments from the retirement system after ceasing to be employees for reasons *other than* death or retirement. This section is commonly known as the "vesting" provision. It allows Group 4 members to opt for "a deferred retirement allowance" at age fifty-five, while members of Groups 1 through 3 must wait until age sixty. *See id.*

Siedlecki correctly points out that section 23–60, by its terms, does not apply to him, as he ceased to be an employee because of retirement. However, viewed in the context of the legislative history outlined above, section 23–60 supports the conclusion that the County Council intended "normal service retirement age" to mean the same thing throughout the Baltimore County Code. We do not discern any reason why the County Council in 1994 would have maintained the specific retirement age of fifty-five in the vesting provision, but purposefully removed it from the provision authorizing medical examinations and other provisions for police service retirement allowances. We must "analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 577, 870 A.2d 186 (2005).

■ Assuming, *arguendo*, that "normal service retirement age" for police does not mean age fifty-five, the only other

---

9. This section was re-codified at section 5–1–230 of the Baltimore County Code (2003).

definition in the Baltimore County Code for that phrase would be after "twenty (20) years of creditable service." *See* § 23–51(c). However, at the time of his disability retirement in 1990, Siedlecki had accrued only fifteen years of creditable service and could not accrue any more creditable service after beginning such retirement. The Baltimore County Code distinguishes between "service," which "means service as employee paid for by employer," and "retirement," which "means withdrawal from active service." *See* § 23–36(t), (x).[10] Before 1990, Siedlecki was an *employee* who received *compensation,* but after 1990, Siedlecki was a *retiree* who collected an *allowance.* Moreover, "creditable service" means "membership service," military service, and, with certain restrictions, prior service. *See* § 23–47(a).[11] "Membership service" is defined as "honorable and faithful service *as an employee* rendered while a member of the retirement system." *See* § 23–36(*o*) (emphasis added).[12] Thus Siedlecki's time spent on disability retirement is not "creditable service."

## *CONCLUSION*

Siedlecki seeks to sidestep the requirement of twenty years of creditable service by claiming that the "normal service retirement age" should be twenty years after his entry into service with the Baltimore County Police Department. In other words, Siedlecki argues that, under section 23–51(c), he would have been eligible to retire in 1995, after twenty years of creditable service, *but for* his accidental injury that resulted in his disability retirement. This argument is without merit for the simple reason that nowhere in the Baltimore County Code is a normal retirement associated with anything other than age and/or creditable service. To read into the statute a

---

10. These sections were re-codified at sections 5–1–201(t), (x) of the Baltimore County Code (2003).

11. This section was re-codified at section 5–1–212 of the Baltimore County Code (2003).

12. This section was re-codified at section 5–1–201(*o*) of the Baltimore County Code (2003).

meaning for "normal service retirement age" that is unsupported by the purpose and language of the statute would violate the cannons of statutory construction. *See Phillips,* 384 Md. at 591, 865 A.2d 590.

" 'Adherence to the meaning of words does not require or permit isolation of words from their context ... (since) the meaning of the plainest words in a statute may be controlled by the context.' " *Wilson v. State,* 21 Md.App. 557, 568, 321 A.2d 549 (1974) (quoting *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299 (1949)). From 1967 until 1994, the phrase "normal service retirement age" meant the specific age of fifty-five for police officers. We do not believe that the County Council intended that meaning to change when it re-structured the law in 1994. As such, the age of fifty-five continues to be the ordinary benchmark for police officers' retirement. This benchmark applies to the vesting provisions, the retirement allowance provisions, and the provision authorizing medical examinations alike. Because in 2002 Siedlecki had not attained the age of fifty-five or completed twenty years of creditable service, ERS was authorized to request medical examinations and terminate his disability retirement as a result of those examinations and other evidence in the record.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**